## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CV-20522-LEIBOWITZ/Elfenbein

**VICTOR PORFIRIO BALOA DIAZ**, and
**PORFI MUSIC, LLC**,

     Plaintiffs,

v.

**EDI KORTA, LLC**, *et al.*,

     Defendants.

_____/

### REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court on Defendants Edi Korta, LLC, Korta Records Co., Playback Productions, Inc., Luis F. Mendoza, Leonor Mendoza, and Carlos A. Mendoza, Sr.'s (hereinafter collectively referred to as "Defendants") Motion to Dismiss (the "Motion"), ECF No. [15], Plaintiffs Victor Porfirio Baloa Diaz and Porfi Music, LLC's (hereinafter collectively referred to as "Plaintiffs") Complaint (the "Complaint"), ECF No. [1], filed pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs filed a Memorandum of Law in Opposition to the Motion (the "Response"), ECF No. [23], to which Defendants filed a Reply in Support of the Motion (the "Reply"), ECF No. [25]. The Honorable David S. Leibowitz referred the Motion to me "for resolution[.]" ECF No. [26]. Having reviewed the Motion, Response, and Reply, as well as the record and relevant law, I find that the Motion should be **GRANTED**.

## I.      BACKGROUND

Plaintiffs filed the instant Complaint on February 9, 2024, alleging claims of copyright infringement against Defendants pursuant to the Copyright Act, 17 U.S.C. §§ 101, *et seq.*

("Copyright Act").[1]  *See generally* ECF No. [1].   Therein, Plaintiffs allege that Plaintiff Porfi Baloa "is a Venezuelan musician, composer, producer[,] and arranger" who owns the "Venezuelan copyright[s]" to the albums titled "Reclamando Nuestro Espacio[,]" "Persona Ideal[,]" "La Misma Pluma[,]" "Ahora Mas Que Nunca[,]" "Búscame[,]" and "Sellos De Mi ADN[.]"  *Id.* at ¶¶ 15, 17. Plaintiffs allege that Defendants infringed upon its copyrights in these works by copying and incorporating "the musical composition, [] lyrics and[,] [] sound recording[s,]" *id.*, of those works — without Plaintiffs' authorization — into infringing music videos that they posted to Youtube.com, *see id.* at ¶¶ 18-25.[2]  Plaintiffs also allege that Defendants created other, unspecified infringing "music videos" that copy and incorporate the "sound recordings" of Plaintiffs' other copyrighted works; Plaintiffs do not identify which of its copyrighted works Defendants copied and incorporated into the unspecified "music videos[.]"  *Id.* at ¶ 26.

Additionally, Plaintiffs allege that Defendants have accounts with (1) Spotify AB, (2) Apple, Inc.'s Apple Music, (3) Amazon.com, Inc.'s Amazon Music, (4) Pandora Media, LLC's Pandora, (5) Deezer S.A.'s Deezer.com, and (6) iHeartMedia, Inc.'s iHeart.com (hereinafter

---

[1] The Court has subject-matter jurisdiction to consider this case pursuant to 28 U.S.C. § 1331 "because the claims asserted by Plaintiffs arise under the Copyright Act[.]"  ECF No. [1] at ¶ 12; *see Viral DRM, LLC v. EVTV Miami, Inc.*, No. 23-CV-22903, 2024 WL 728095, at *2 (S.D. Fla. Feb. 22, 2024) ("We have federal-question jurisdiction under 28 U.S.C. § 1331 because the Plaintiff asserts his only claim under the Copyright Act[.]" (citation omitted)); *see also MedSoftSys, Inc. v. CoolMoon Corp.*, 553 F. Supp. 3d 1275, 1279 (S.D. Fla. 2021) ("Under 28 U.S.C. § 1331, federal courts have federal-question jurisdiction over suits 'in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" (quoting *Newton v. Capital Assurance Co.*, 245 F.3d 1306, 1308-09 (11th Cir. 2001))).

[2] Plaintiffs allege that, on March 18, 2022, Defendants copied and incorporated the musical composition, lyrics, and sound recording of the song "Hoy Aprendi" into a music video and posted it to Youtube.com. *See* ECF No. [1] at ¶ 25.  However, Plaintiffs do not state in either their Complaint or Response that they own the copyright to that work.  *See generally id.*; ECF No. [23].  It is unclear whether this song is included in one of the albums for which Plaintiffs own the copyright as no such allegations are contained within the Complaint.

collectively referred to as the "Online Streaming Platforms")[3] — online streaming providers of music, video, and other audiovisual works. *See id.* at ¶¶ 39, 41, 43, 45, 47, 49. Plaintiffs claim that Defendants uploaded infringing works that copy and incorporate Plaintiffs' copyrighted musical compositions, lyrics, and sound recordings to the accounts they maintain with the Online Streaming Platforms. *See id.* at ¶¶ 40, 42, 44, 46, 48, 50.

Based on these allegations, Plaintiffs raise three claims. Count 1 is a claim of direct copyright infringement. Plaintiffs allege that Defendants, "individually, or with each other, or a combination thereof," created infringing works that copied and incorporated Plaintiffs' copyrighted musical compositions, lyrics, and sound recordings and posted those infringing works to the Online Streaming Platforms. *Id.* at ¶¶ 53, 55.

Count 2 is for contributory copyright infringement. Plaintiffs allege that Defendants committed contributory copyright infringement when they distributed infringing copies of Plaintiffs' copyrighted works to individuals in the general public who listened to, watched, and downloaded the infringing copies on and to their personal electronic devices. Plaintiffs assert that Defendants accomplished the distribution of the infringing copies by posting them to the accounts they maintain with the Online Streaming Platforms. *See id.* at ¶¶ 61, 63. Plaintiffs substantiate this claim by alleging that the Online Streaming Platforms have documented "millions of views" of the infringing copies. *See id.* at ¶ 62.

Plaintiffs' final claim in Count 3 is one for vicarious copyright infringement. Consistent with their allegations concerning their second claim, Plaintiffs allege that individuals in the general public listened to, watched, and downloaded the infringing copies of Plaintiffs' copyrighted works that Defendants posted to the accounts they maintain with the Online Streaming Platforms. *See*

---

[3] When I refer to "Online Streaming Platforms," I am also referring to Youtube.com.

*id.* at ¶¶ 71, 72, 73.  Plaintiffs then allege that Defendants "intentionally induced or materially contributed" to the general public's infringing activity and "possessed . . . a direct financial interest" in the general public's infringing activity.  *Id.* at ¶¶ 75, 76.

On March 28, 2024, Defendants filed the Motion on the ground that the Complaint failed to state a claim.  *See generally* ECF No. [15].  Plaintiffs thereafter, on April 11, 2024, filed their Response, characterizing the Motion as a delay tactic.  *See* ECF No. [23] at 2.  Plaintiffs argue that they have properly alleged each element of each count of the copyright infringement claims in the Complaint.  *See id.* at 3-19.  Defendants timely filed their Reply, on April 18, 2024, which essentially restates the arguments raised in the Motion.  *See* ECF No. [25] at 2-5.  The Motion is now ripe for review.

## II.  LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citation omitted).  Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).  The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (quoting *Twombly*, 550 U.S. at 555).  "[T]he standard 'simply calls for enough

fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309-10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545).

On a motion to dismiss, "the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).  Unsupported factual allegations and legal conclusions, however, receive no such deference.  *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").  A complaint's "well-pled allegations must 'nudge the claims across the line from conceivable to plausible.'" *Hays v. Page Perry, LLC*, 627 F. App'x 892, 896 (11th Cir. 2015) (alterations adopted; quoting *Twombly*, 550 U.S. at 555, 570).

## III.    DISCUSSION

I find that the Complaint should be dismissed on procedural and substantive grounds.  First, the Complaint is a shotgun pleading because it fails to plead facts identifying which Defendants are responsible for each claim of copyright infringement raised in the Complaint.   Second, Plaintiffs failed to plausibly allege claims for contributory and vicarious copyright infringement against Defendants.  I explain my reasoning below.

### A.    <u>Procedural Grounds for Dismissal</u>

Defendants begin the Motion by arguing that the Complaint is a "shotgun-style" pleading because Plaintiffs "failed to plead the requisite facts necessary to attach liability for direct copyright infringement, or contributory and vicarious infringement, to each of the Defendants." ECF No. [15] at 2.  Defendants contend that Plaintiffs' allegations lack "factual specificity" and, thus, fail to "notify Defendants of the grounds upon which Plaintiffs' copyright infringement

claims rest, so that Defendants can each adequately defend themselves." *Id.* at 3. Defendants further argue that the Complaint should be dismissed on this basis alone. *See id.*

Plaintiffs responded, asserting that they need not allege with specificity which individual Defendant undertook the alleged infringing activity because the identity (or identities) of the injuring Defendant cannot be determined at this stage of the pleadings considering Defendants' use of "various entities and fictitious name registrations" to conceal the identity of the true owner of the online accounts disseminating the infringing copies. *Id.* Plaintiffs, however, do not cite to any case law to support their argument.

Defendants filed a Reply but did not address Plaintiffs' argument concerning their inability to plead and identify the specific infringing Defendant due to the alleged concealed identity of the online account owner or owners. *See generally* ECF No. [25].

After careful review of the allegations, the Court finds that Plaintiff's Complaint is a "shotgun pleading." There are four types of shotgun pleadings that violate Rule 8(a), Rule 10(b), or both:

> The most common type — by a long shot — is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type . . . is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321-23 (11th Cir. 2015) (footnote call numbers omitted). The "unifying characteristic" of shotgun pleadings is they "fail . . . to give

the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323 (footnote call number omitted).

The Complaint is a category four shotgun pleading because Plaintiffs allege each cause of action generally "and largely fail[] to specify 'which of [] [D]efendants are responsible for which acts or omissions, or which . . . [D]efendants the claim is brought against.'" *Dimanche v. Jackson*, No. 22-CV-2073, 2024 WL 1739277, at *5 (M.D. Fla. Apr. 23, 2024) (quoting *Weiland*, 792 F.3d at 1323). With respect to each claim raised in the Complaint, Plaintiffs allege that Defendants are collectively responsible for the infringement of its copyrighted works. *See generally* ECF No. [1] at ¶¶ 52-80. However, nowhere in any of those claims does Plaintiff allege which Defendants are responsible for the acts forming its basis. *See generally id.* Instead, Plaintiffs lump Defendants together when alleging the grounds for each claim, making it impossible for both the Court and Defendants to discern who is responsible for each of the Complaint's three discreet copyright infringement claims. *See Guerra v. Rockdale Cnty., Ga.*, 420 F. Supp. 3d 1327, 1346 (N.D. Ga. 2019) ("The Federal Rules, however, 'do not permit a party to aggregate allegations against several defendants in a single, unspecific statement, but instead require the pleader to identify (albeit generally) the conduct of each defendant giving rise to his claims.'" (quoting *Parker v. Brush Wellman, Inc.*, 377 F. Supp. 2d 1290, 1294 (N.D. Ga. 2005); other citation omitted)); *see also Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) ("The complaint is a quintessential 'shotgun' pleading . . . [in part because it] is replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged[.]" (internal citation omitted)).

Turning to the Complaint's "General Allegations[,]" the only particularized allegations of copyright infringement in the Complaint appear in paragraphs 36, 37, and 38, in which Plaintiffs state the following:

> 36. Defendant Luis F. Mendoza is the active, moving force behind Defendant Edi Korta, LLC and Defendant Korta Record's Co., and is responsible for using Plaintiff Porfi Baloa's Copyrighted Sound Recordings without permission to create the music videos that have been uploaded to YouTube.
>
> 37. Defendant Leonor Mendoza is the active, moving force behind Defendant Edi Korta, LLC and is responsible for using Plaintiff Porfi Baloa's copyrighted sound recordings without permission to create the music videos that have been uploaded to YouTube.
>
> 38. Defendant Carlos A. Mendoza is the active, moving force behind Defendant Playback Productions, Inc., and is responsible for using Plaintiff Porfi Baloa's copyrighted sound recordings without permission to create the music videos that have been uploaded to YouTube.

ECF No. [1] at ¶¶ 37-38.  However, these allegations still do not provide the necessary information to discern which Defendants are responsible for the act of uploading.  After all, in paragraphs 18 through 25 of the Complaint, Plaintiffs allege generally that "Defendants" uploaded infringing copies of its copyrighted works to Youtube.com on 8 separate occasions but does not allege which Defendant or combination of Defendants is responsible for each of these acts.[4]  *Id.* at ¶¶ 18-25.

Nevertheless, I am cognizant of Plaintiffs' argument that they need not allege with specificity which Defendants are responsible for the allegedly infringing activity because Defendants are allegedly hiding behind "various entities and fictitious name registrations" to evade accountability.  ECF No. [23] at 6.  However, Plaintiffs provide no law to substantiate their claim

---

[4] It also bears mentioning that these particularized allegations do nothing to clarify Plaintiffs' allegations concerning the Online Streaming Platforms.  Specifically — and as already mentioned in the background section of this Report, Plaintiffs alleged generally that "Defendants" uploaded the allegedly infringing copies to the Online Streaming Platforms.  However, Plaintiffs particularized allegations only speak to the infringing activity as it concerns Youtube.com and, therefore, say nothing about who is responsible for the infringing activity that allegedly occurred on the six other Online Streaming Platforms.

that a relaxed pleading standard applies when a defendant or group of defendants allegedly conceal

their identities, and the Court is unaware of the existence of such a pleading standard.

In sum, Plaintiffs' Complaint is a shotgun pleading that "fail[s] . . . to give the defendants

adequate notice of the claims against them and the grounds upon which each claim rests[,]"

*Weiland*, 792 F.3d at 1323 (footnote call number omitted), and, therefore, the Complaint, in its

entirety, must be dismissed.

      **B.**     <u>**Substantive Grounds for Dismissal**</u>

Even if the Complaint were not a shotgun pleading, it would still be subject to dismissal in

part on substantive grounds because Plaintiffs failed to plausibly allege claims of contributory and

vicarious copyright infringement against Defendants.  I address each deficiency in turn below.

      **1.**     *Contributory Copyright Infringement*

The Motion argues that Plaintiffs' claim for contributory copyright infringement should be

dismissed because Plaintiffs failed to plausibly allege that individuals in the general public directly

infringed on its copyrighted works or that Defendants directly induced said infringement.  *See* ECF

No. [15] at 7.  Defendants further argue that, even if the Court were to find that direct infringement

had occurred, the actions of individuals in the general public cannot be used to attach liability to

Defendants because Plaintiffs failed to allege that individuals in the general public knew of the

purported infringement.  *See id.* at 8.

Plaintiffs, for their part, argue that when individuals in the general public listened to,

watched, and downloaded the infringing copies, the general public directly infringed on their

copyrights.  *See* ECF No. [23] at 9.  Plaintiffs explain that individuals in the general public directly

infringed on their copyrights "by causing a copy of the sound recording to be downloaded and

played on their computers, cell phones," and other devices.  *Id.* (emphasis omitted).  Plaintiffs then

claim that they need not allege that Defendants instructed the general public to stream the infringing copies and that alleging Defendants published the infringing copies on the Online Streaming Platforms "for the very purpose of infringing use by [the general public]" was enough to plausibly allege inducement.  *See id.* at 11 (citing *UMG Recordings, Inc. v. Sinnott*, 300 F. Supp. 2d 993, 998 (E.D. Cal. 2004)).

Defendants did not brief the issue of contributory copyright infringement in their Reply. *See generally* ECF No. [25].  Instead, the Reply focuses on Plaintiffs' purported failure to state a claim for either direct or vicarious copyright infringement.  *See generally id.*

"Contributory infringement originates in tort law and stems from the notion that one who directly contributes to another's infringement should be held accountable."  *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996) (citing *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 417 (1984); other citation omitted).  To establish a *prima facie* case of contributory infringement, a plaintiff must establish "(1) [third-party] direct infringement, (2) that . . . [the defendant] had knowledge of the [third-party] direct infringement and (3) that the [] [d]efendant[] intentionally induced, encouraged[,] or materially contributed to the [third-party] direct infringement."  *Oravec v. Sunny Isles Luxury Ventures L.C.*, 469 F. Supp. 2d 1148, 1174 (S.D. Fla. 2006) (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005); other citations omitted), *aff'd*, 527 F.3d 1218 (11th Cir. 2008).

i.     *Third-party Direct Infringement*

Plaintiffs must plead facts establishing that individuals in the general public directly infringed on their copyrighted works.  To allege direct copyright infringement, a plaintiff "must prove '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that

are original.'" *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1301 (11th Cir. 2020) (quoting *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996)).

First, Plaintiffs plausibly alleged that they own valid copyrights. "[C]opyright holders of 'United States works' are required under [the Copyright Act] to register their works before instituting an infringement action[;]" however, "the same is not true for owners of 'foreign works.'" *Dish Network LLC v. Fraifer*, No. 16-CV-2549, 2020 WL 1515938, at *9 (M.D. Fla. Jan. 31, 2020) (quoting *Kernel Recs. Oy v. Mosley*, 694 F.3d 1294, 1302 (11th Cir. 2012)), *report and recommendation adopted*, No. 16-CV-2549, 2020 WL 1512090 (M.D. Fla. Mar. 30, 2020). Section 104(b)(2) of the Copyright Act provides that "works first published in foreign countries are protected in the United States if the foreign country" in which the works were published was a treaty party on the date the foreign works were published. *Vergara Hermosilla v. Coca-Cola Co.*, 717 F. Supp. 2d 1297, 1303 (S.D. Fla. 2010) (citing 17 U.S.C. § 104(b)(2)). A "treaty party" is statutorily defined as "a country or intergovernmental organization other than the United States that is a party to an international agreement." 17 U.S.C. § 101. "An 'international agreement' is . . . the Universal Copyright Convention [and] . . . the Berne Convention[,]" among others. *Id.*

In the Complaint, Plaintiffs identify six Venezuelan copyrights they owned and registered as of June 2021. *See* ECF No. [1] at ¶ 17. Venezuela was a "treaty party" to numerous copyright treaties with the United States, including the Universal Copyright Convention and the Berne Convention, on the dates Plaintiffs registered their copyrighted works. *See Convention & Protocols Dated at Geneva Sept. 6, 1952*, T.I.A.S. No. 3324 (Dec. 6, 1954) (showing Venezuela to be a signatory to the Universal Copyright Convention and that the Convention came "into force on September 16, 1955"); *World Intellectual Property Organization*, WIPO-Administered Treaties,   https://www.wipo.int/wipolex/en/treaties/ShowResults?search_what=C&treaty_id=15

(last visited June 24, 2024) (showing that Venezuela's accession to the Berne Convention went into force on December 30, 1982).  Plaintiffs, therefore, plausibly allege that they own valid copyrights subject to the Copyright Act's protections.

Having concluded that Plaintiffs allege ownership of valid copyrights, I must determine whether Plaintiffs pleaded facts establishing the second element of direct copyright infringement, that is that individuals in the general public copied constituent elements of the work that are original.  However, since Plaintiffs do not allege that individuals in the general public listened to, watched, and downloaded Plaintiffs' works on their own but instead allege that the Defendants created allegedly infringing works that "copi[ed] and incorporate[ed] the sound recording of" Plaintiffs' copyrighted works, I must determine whether Defendants' creation of the allegedly infringing copies amounted to copyright infringement such that individuals in the general public can be deemed to have directly infringed on Plaintiffs' copyrighted works by consuming them.

It is Defendants' position that Plaintiffs failed to plausibly allege a claim of *direct* copyright infringement because they failed to allege which protectable elements of their copyrights Defendants copied.  Plaintiffs allege in the Complaint that they have "copyright[s] [] in the musical composition, [] lyrics and [] sound recording[s]" in six albums to which they collectively refer to as "the Plaintiff Porfi Baloa's Copyrighted *Sound Recordings*."  ECF No. [1] at ¶ 17 (emphasis added).  By collectively defining the musical composition, lyrics, and sound recordings of these copyrighted albums in this way, I interpret Plaintiffs' allegations that Defendants copied and incorporated the "sound recordings" of their copyrighted albums as alleging that Defendants engaged in the wholesale copying of their copyrighted works' "musical composition, [] lyrics[,] and [] sound recording[s.]"  *Id.*  Stated differently, Plaintiffs allege that Defendants copied all elements of the copyrighted work.

And since Plaintiffs have alleged that Defendants engaged in the wholesale copying of their works, Plaintiffs need not identify which protectable elements of the copyrighted works Defendants copied and incorporated into the infringing copies because — as Defendants acknowledge in their Reply — the "[c]opying of constituent elements is logically included in wholesale copying[.]"  ECF No. [25] at 2 (citation omitted); *see Elektra Ent. Grp., Inc. v. Jensen*, No. 07-CV-0054, 2007 WL 2376301, at *2 (N.D. Ga. Aug. 16, 2007) ("In copying and sharing the sound recordings in their entirety, and not merely parts thereof, Defendant by necessity distributed elements of the works that comprise protected expression as well as any unprotected ideas that may exist."); *see also Heralds of Gospel Found., Inc. v. Varel*a, No. 17-CV-22281, 2017 WL 3868421, at *4 (S.D. Fla. June 23, 2017) ("Furthermore, there is no requirement that this Court determine whether [the defendant's] works are substantially similar to Plaintiffs' Videos because [the defendant] posted exact copies of the Videos." (emphasis and quotation marks omitted)).

But Plaintiffs do not allege that individuals in the general public infringed on their copyrighted works by creating infringing copies on their own.  Rather, Plaintiffs allege that individuals in the general public infringed on their copyrighted works by listening to, watching, and downloading Defendants' infringing copies of their works.  *See* ECF No. [1] at ¶¶ 61-64.  In other words, it is the general public's act of consuming (watching, listening, and downloading) Defendants' allegedly infringing works that constituted third-party direct infringement.  *Id.*

"One of the rights guaranteed to a copyright owner by the Copyright Act is the 'exclusive right to perform the copyrighted work publicly,' which is infringed by transmitting or otherwise communicating a performance to the public in the form of streaming over the internet." *Caracol Television, S.A. v. TVmia Int'l Corp.*, No. 16-CV-23486, 2017 WL 6389719, at *3 (S.D. Fla. Dec. 13, 2017) (quoting *Am. Broadcasting Cos., Inc. v. Aereo, Inc.*, 573 U.S. 431, 435 (2014)).

"Infringement of the public performance right protected by 17 U.S.C. § 101 is not confined to the content originator; instead, each party involved in the process of performing an audiovisual work may be subject to liability." *Dish Network L.L.C. v. Fraifer*, No. 16-CV-2549, 2021 WL 6690278, at *2 (M.D. Fla. Dec. 13, 2021); *see also Aereo, Inc.*, 573 U.S. at 432 ("Thus, both the broadcaster and the viewer perform, because they both show a television program's images and make audible the program's sounds." (emphasis and quotation marks omitted)).

Here, when Plaintiffs allege that individuals in the general public listened to, watched, and downloaded the infringing copies on and from the Online Streaming Platforms, Plaintiffs plausibly allege that the general public directly infringed on its copyrighted works. *See, e.g.*, *Millennium Funding, Inc. v. 1701 Mgmt. LLC*, No. 21-CV-20862, 2022 WL 901745, at *5 (S.D. Fla. Mar. 28, 2022) ("When Defendants' subscribers use their so-called Popcorn Time VPN to download, stream, share, or reproduce copies of Copyright Plaintiffs' Works . . . , these subscribers directly infringe Plaintiffs exclusive rights of public performance, distribution, and reproduction."); *see also Capitol Recs. v. Rita Carmichael*, 508 F. Supp. 2d 1079, 1084-85 (S.D. Ala. 2007) (finding allegations that an infringer used and continued to use an online media distribution system to download and distribute copyrighted works without permission were sufficient to give rise to a cognizable claim for direct copyright infringement); *Columbia Pictures Indus., Inc. v. Aveco, Inc.*, 800 F.2d 59, 62 (3d Cir. 1986) ("[P]laying a video cassette . . . constitutes a performance under Section 101." (alteration adopted; quoting *Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*, 749 F.2d 154, 158 (3d Cir. 1984))).

However, Defendants do not contest that listening to, watching, and downloading infringing copies of Plaintiffs' copyrighted works would amount to direct copyright infringement. Rather, Defendants argue that Plaintiffs fail to plead facts establishing the first element of a

contributory copyright infringement claim (third-party direct infringement) because they do not allege that individuals in the general public knowingly engaged in infringing activity when they listened to, watched, and downloaded the allegedly infringing content made available by Defendants' online accounts.  To support this proposition, Defendants cite to *Bell v. Alexander*, No. 21-CV-24301, 2022 WL 22824862 (S.D. Fla. Aug. 3, 2022).  In that case, the Court stated that "[a]n innocent infringer is one who was not aware and had no reason to believe that their acts constituted [] copyright infringement."  *Id.* at *4 (quoting *Maverick Recording Co. v. Harper*, 598 F.3d 193, 198 (5th Cir. 2010)).  But, in the same paragraph where that quote appears, the Court also states that an infringer's status as "an innocent infringer" "would not absolve [the infringer] from full liability[,]" *id.* — a finding that is consistent with that of other district courts.  *See, e.g.*, *GlobalOptions Servs., Inc. v. N. Am. Training Grp., Inc.*, 131 F. Supp. 3d 1291, 1300 (M.D. Fla. 2015) ("Here, there must also first be a finding of direct infringement to hold the party liable; however, knowledge of the direct infringement is not necessary." (citation omitted)); *Thornton v. J Jargon Co.*, 580 F. Supp. 2d 1261, 1275 n. 6 (M.D. Fla. 2008) ("'[I]ntent or knowledge is not an element of infringement,' however, and '[e]ven an innocent infringer is liable for infringement.'" (alteration in original; quoting *Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g, Co., Inc.*, 807 F.2d 1110, 1113-14 (2d Cir. 1986); other citation omitted)).

Accordingly, Defendants' "innocent infringement" argument is without merit and Plaintiffs' allegations that individuals in the general public listened to, watched, and downloaded infringing copies of its copyrighted works are sufficient to plead the first element of contributory infringement, that is third-party direct infringement.

ii.    *Defendants' Knowledge of the Third-party Direct Infringement*

Next, Plaintiffs must plead facts establishing that Defendants knew of the general public's infringing activity.  "The standard of knowledge is objective[,]" meaning that a defendant must "[k]now, or have reason to know" of the general public's infringing activity.  *Casella v. Morris*, 820 F.2d 362, 365 (11th Cir. 1987) (quoting *Gershwin Publishing Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir.1971); other citations omitted)). "Turning a blind eye to detectable acts of infringement" however does not allow an infringer to "escape [the] imposition of vicarious liability[.]"  *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001) (citations and subsequent history omitted).

Plaintiffs allege in the Complaint that Defendants "knew or should have known that [individuals in the general public] would" directly infringe upon Plaintiffs copyrighted work when it posted the infringing copies on the Online Streaming Platforms.  ECF No. [1] at ¶ 65.  Plaintiffs' claim that the general public's direct infringement is "evidenced by the millions of views documented on" the Online Streaming Platforms support this allegation.  *Id.* at ¶ 62.  Reading these allegations together, I find that Plaintiffs plausibly allege that Defendants "[knew] or ha[d] reason to know" of the general public's infringing activity.  *Cable/Home Commc'n Corp. v. Network Prods.*, Inc., 902 F.2d 829, 845 (11th Cir. 1990) (footnote call number and quotation omitted); *see also ABS-CBN Corp. v. Barrientos*, No. 15-CV-61515, 2016 WL 7469974, at *5 (S.D. Fla. May 16, 2016) ("Defendant has knowledge of his infringement since he provides and performs the content and does so solely for the purpose of his users' viewing"), *report and recommendation adopted*, No. 15-CV-61515, 2016 WL 7469975 (S.D. Fla. June 30, 2016).  With this element properly pled, I now turn to the final element of the contributory copyright infringement standard.

iii.   *Intentional Inducement and Material Contribution*

Finally, Plaintiffs must plausibly allege that Defendants intentionally induced or materially contributed to the general public's infringement of Plaintiffs' copyrighted works.  *See VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 745 (9th Cir. 2019) ("Contributory liability requires that a party (1) has knowledge of another's infringement and (2) either *(a) materially contributes to or (b) induces that infringement.*" (emphasis added; quotation omitted)).  To establish inducement, "a plaintiff may describe a defendant taking affirmative steps to encourage direct infringement, such as advertising an infringing use or instructing on how to engage in an infringing use." *Microsoft Corp. v. Guirguis*, No. 20-CV-24514, 2022 WL 1664181, at *3 (S.D. Fla. Mar. 30, 2022) (citing *Grokster*, 545 U.S. at 936).  However, the absence of facts supporting allegations of intentional inducement is not dispositive, and a claim of contributory copyright infringement can still survive if a plaintiff sets forth allegations supporting a finding that a defendant materially contributed to a third party's direct infringement.  *See Michael Grecco Prods., Inc. v. RGB Ventures, LLC*, No. 16-CV-1335, 2017 WL 4077045, at *8 (M.D. Fla. Sept. 14, 2017) ("[I]t appears that [the plaintiff] has stated a plausible claim for contributory infringement even without alleging a clear expression or other affirmative step, as addressed in [*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*]" (alteration adopted; quotation omitted)).  A court may find material contribution in the contributory copyright infringement context if a plaintiff alleges that a defendant "provided the means for [a third party's] infringement [of copyrighted material] or distributed a commercial product that [a third party] subsequently used to infringe [copyrighted material]." *Disney Enters., Inc. v. Hotfile Corp.*, No. 11-CV-20427, 2013 WL 6336286, at *35 (S.D. Fla. Sept. 20, 2013).

In the Complaint, Plaintiffs allege that Defendants provided the Online Streaming Platforms with infringing copies of Plaintiffs' copyrighted works "to induce such online and

streaming providers to give access to third parties to watch or listen to the infringing copies of Plaintiff[s']" copyrighted works.  ECF No. [1] at ¶ 63.  To substantiate this claim, Plaintiffs make the conclusory allegations that Defendants (1) "intentionally induced or materially contributed to the third party listening and downloading of the music videos onto . . . devices [owned by individuals in the general public,]" (2) "provided direction to [individuals in the general public], or allowed [individuals in the general public] to access" infringing copies of Plaintiffs' copyrighted works, and (3) "possessed the right and ability to supervise" the general public's infringing activity.  *Id.* at ¶ 65.

My review of case law on this subject in the context of a motion to dismiss revealed that whenever a district court found that a plaintiff plausibly alleged intentional inducement or material contribution, it supported its finding with multiple, substantial allegations drawn from a plaintiff's complaint.  For instance, in *Michael Grecco Productions, Inc. v. RGB Ventures, LLC*, a court in the Middle District of Florida concluded that the plaintiff plausibly alleged material contribution after identifying allegations that (1) the defendant "knowingly continued to provide the [third party distributors] access to the copyrighted images after" its authorization expired, (2) the defendant "failed to act to remove the images or otherwise restrict access to them when it no longer had license, permission, or other authorization to distribute the images," and (3) "[the defendant's] actions consequently permitted the [third party distributors] to engage in direct infringement." 2017 WL 4077045, at *8 (quotation omitted).  That district court emphasized that the plaintiff's allegations, "*taken together*, [were] sufficient to state a plausible claim for contributory infringement based on a material contribution theory[,]" *id.* (emphasis added; citing *Casella*, 820 F.2d at 365-66; other citation omitted).  Similarly, a decision from this District reached the conclusion that a defendant "intentionally cause[d] and materially contribute[d] to his users'

infringement . . . [by] providing the infringing content for us[e] *and* promoting such content through [defendant's] websites and via social media." *ABS-CBN Corp. v. Barrientos*, 2016 WL 7469974, at *5 (emphasis added; citation omitted).

By contrast, a review of the substantive factual allegations in Plaintiffs' Complaint reveals no similar allegations upon which other courts have relied when weighing claims of contributory copyright infringement on a motion to dismiss. To Plaintiffs' credit, they alleged that Defendants made infringing copies of their copyrighted work available to the general public when they uploaded those copies to the Online Streaming Platforms. *See* ECF No. [1] at ¶¶ 18-25, 39-50. However, "[a] mere allegation that the defendant provided the third party with the opportunity to engage in wrongful conduct is insufficient to survive a motion to dismiss." *Bus. Casual Holdings, LLC v. YouTube, LLC*, No. 21-CV-3610, 2022 WL 837596, at *5 (S.D.N.Y. Mar. 21, 2022) (quotation omitted); *see also Grokster*, 545 U.S. at 937 ("[M]ere knowledge of infringing potential or of actual infringing uses would not be enough here to subject a distributor to liability[.]").

And the Complaint's other allegations concerning this element are too insubstantial and formulaic to save this claim from dismissal. For example, Plaintiffs allege that Defendants "intentionally induced or materially contributed to [the general public's] listening and downloading of the" infringing copies but provide no detail explaining *how* Defendants intentionally induced or materially contributed to the infringing conduct; and with respect to the other allegations, Plaintiffs do not allege *how* Defendants "direct[ed]" the general public to engage in infringing activity or what facts support their conclusion that Defendants "possessed the right and ability to supervise" the general public's infringing activity. *Id.* at ¶ 65. Rather, Plaintiffs' allegations of the third element of contributory copyright infringement are a formulaic recitation without factual substantiation.

In sum, despite Plaintiffs' success in pleading the first two elements of this claim for relief, they fail to plead facts establishing either intentional inducement or material contribution. Thus, Plaintiffs failed to plausibly allege a claim for contributory copyright infringement and Count 2 is subject to dismissal.

### 2.    *Vicarious Copyright Infringement Claim*

Finally, Defendants' Motion argues that the Court should dismiss Plaintiffs' claim for vicarious copyright infringement because the allegations in the Complaint are so conclusory that they fail to state a claim for relief. *See* ECF No. [15] at 1. However, should the Court find Plaintiffs' allegations sufficiently substantial to allow for a merits review of this claim, the Motion argues that Plaintiffs' theory of liability is "illogical" on the ground that Defendants cannot control the purportedly infringing conduct of individuals in the general public.[5] *Id.* at 10-11.

Plaintiffs oppose this position on the ground that it ignores the allegations made in the Complaint. *See* ECF No. [23] at 15. Plaintiffs maintain that the Complaint alleges that Defendants (1) created accounts with the various Online Streaming Platforms and then proceeded to copy and upload Plaintiffs' copyrighted sound recordings onto the platforms, (2) controlled these accounts and the content on the Online Streaming Platforms, and (3) uploaded infringing copies of Plaintiffs' copyrighted works "to obtain a direct financial benefit from the end-user access. *See id.* at 19 (emphasis omitted).

Defendants round out their argument on this issue by reasserting their position that Plaintiffs' allegations supporting this claim were conclusory and that they cannot be held liable for the infringing activity of individuals in the general public. *See* ECF No. [25] at 4-5.

---

[5] As this Report and Recommendation concludes that Count 3 fails to state a claim for relief, it does not reach the second argument raised in the Motion.

To state a claim for "vicarious infringement, a plaintiff must" allege "direct infringement by a third party." *See Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 386 (3d Cir. 2016); *see also Disney Enters., Inc.*, 2013 WL 6336286, at *30 ("[T]o establish this derivative liability, a plaintiff must first make a [*prima facie*] case of direct infringement by a third party[.]" (citation omitted)). Once direct infringement by a third party has been alleged, a plaintiff must allege that a defendant has (1) the "right and ability to supervise the [third party's] infringing activity" and (2) "a direct financial interest [in the third party's infringing activity]." *Millennium Funding, Inc. v. 1701 Mgmt. LLC*, 576 F. Supp. 3d 1192, 1214 (S.D. Fla. 2021) (citation omitted), *amended on reconsideration in part*, No. 21-20862, 2022 WL 845468 (S.D. Fla. Mar. 22, 2022); *see Casella*, 820 F.2d at 365.

i.      *Third-party Direct Infringement*

Based on the reasoning articulated above, the Complaint plausibly alleges that individuals in the general public directly infringed on Plaintiffs' copyrighted works. *See* discussion *supra* III.B.1.i.

ii.      *Right to Supervise and Control*

With that threshold issue decided, I turn to the two remaining elements of the vicarious copyright infringement standard. Taking the "right to supervise and control" prong first, Plaintiffs must allege that Defendants "had the right and ability to supervise and control the infringing activities" of the infringing general public. *See Payne v. Essential Media Grp. LLC*, No. 24-CV-21119, 2024 WL 2880727, at *4 (S.D. Fla. June 8, 2024) (citing *Coach, Inc. v. Swap Shop, Inc.*, 916 F. Supp. 2d 1271, 1282 (S.D. Fla. 2012)). In a vicarious copyright infringement claim, the "'control' element is satisfied by a plaintiff showing that a defendant has both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so." *Latele Television, C.A. v. Telemundo Commc'ns Grp.*, LLC, No. 12-CV-22539, 2014 WL 7272974, at *5 (S.D. Fla.

Dec. 18, 2014) (alterations adopted; quoting *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007)).  Plaintiffs fail to make that showing.  The only allegation supporting this element is Plaintiffs' statement that Defendants had "the right and ability to supervise" the general public's infringing activity.  ECF No. [1] at ¶ 76.  But this conclusory statement standing alone is just that, a conclusion.  It does not explain the extent to which and in what capacity Defendants have "the right and ability to supervise" the infringing activity or how they have the practical ability to do so.

Plaintiffs attempt to rehabilitate this claim, in their Response, by stating that "Defendants could have taken down the illegal copies of the sound recordings from the online platforms."  ECF No. [23] at 15.  But that allegation does not appear anywhere in the Complaint, and "a plaintiff may not amend its complaint in [its] response to a motion to dismiss."  *In re Kosmos Energy Ltd. Sec. Litig.*, 955 F. Supp. 2d 658, 676 (N.D. Tex. 2013); *see also Huls v. Llabana*, 437 F. App'x 830, 831 n.5 (11th Cir. 2011) (explaining that a "plaintiff may not amend his complaint through argument in a brief opposing summary judgment" (alteration adopted; quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).  Plaintiffs' failure to plausibly allege this element of vicarious copyright infringement alone warrants the dismissal of Count 3.

iii.  *Direct Financial Interest*

Even if Plaintiffs plausibly alleged that Defendants had the right and ability to supervise the general public's infringing activity, Plaintiffs still fail to plausibly allege a direct financial interest in the infringing activities of the general public.  As alluded to earlier, "vicarious copyright infringement arises 'when the defendant profits directly from the infringement and has a right and ability to supervise the direct infringer, even if the defendant initially lacks knowledge of the infringement.'" *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1138 (11th Cir. 2007)

(quoting *Grokster*, 545 U.S. at 931 n. 9)).  Here, the only allegation Plaintiffs make to substantiate this element is that the "Defendants [] possessed . . . a direct financial interest in the music videos." ECF No. [1] at ¶ 76.  This allegation alone is insufficient to allege a direct financial interest in the infringing activity of the general public because it fails to "include specific allegations describing the nature of this financial interest[.]"  *Payne*, 2024 WL 2880727, at *4.  By failing to include such factual allegations, Plaintiffs fail to sufficiently allege the third element of vicarious copyright infringement.

For the reasons stated above, Plaintiffs fail to plead facts establishing a claim for vicarious copyright infringement against Defendants and Count 3 is, therefore, subject to dismissal.

## IV.   CONCLUSION

For the foregoing reasons, I respectfully **RECOMMEND** that Defendants' Motion to Dismiss, **ECF No. [15]**, be **GRANTED** and that the claims in the Complaint be dismissed without prejudice, giving Plaintiffs an opportunity to file an amended complaint that cures the procedural and substantive deficiencies identified herein.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable K. Michael Moore, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

CASE NO. 24-CV-20522-LEIBOWITZ/Elfenbein

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida on July 15, 2024.

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc:  All Counsel of Record