# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CV-20522-LEIBOWITZ/Elfenbein

**VICTOR PORFIRIO BALOA DIAZ**, *et al.*,

  Plaintiff,

v.

**EDI KORTA LLC,** *et al.,*

  Defendant.

_____/

## <u>OMNIBUS ORDER</u>

 **THIS CAUSE** is before the Court on (1) Plaintiffs' Motion to Exclude the Expert Testimony of Defendants' Expert Leslie Zigel on all Non-Damages Topics ("Plaintiffs' Motion to Exclude"), ECF No. [82]; (2) Defendants' Motion to Strike Plaintiffs' Improper and Untimely Expert Report by Plaintiffs' Handwriting Expert ("Defendants' Motion to Strike Handwriting Expert"), ECF No. [86]; (3) Defendants' Motion to Strike Plaintiffs' Improper and Untimely Expert Report by Venezuelan Law Expert ("Defendants' Motion to Strike Venezuelan Law Expert"), ECF No. [119]; and (4) Defendants' Request for Judicial Notice ("Defendants' Motion for Judicial Notice"), ECF No. [88], (collectively, "the Motions")*.* The Honorable David S. Leibowitz referred these motions to me. *See* ECF No. [102] and ECF No. [120].

## I. BACKGROUND

 Plaintiffs filed the Complaint on February 9, 2024, alleging claims of copyright infringement against Defendants pursuant to the Copyright Act, 17 U.S.C. §§ 101, *et seq.* ("Copyright Act"). *See generally* ECF No. [1]. Defendants, thereafter, filed a Motion to Dismiss, which was referred to me for a report and recommendation, seeking dismissal of all three counts

in the Complaint for failure to state a claim for relief.  *See* ECF No. [15].  Once the Motion to Dismiss was fully briefed, I recommended that the Complaint be dismissed without prejudice, giving Plaintiffs the opportunity to file an amended pleading and cure the substantive and procedural deficiencies in the original Complaint.  *See* ECF No. [29].  Following the entry of the Order Adopting the Report and Recommendation, Plaintiffs filed their Amended Complaint, which is their operative pleading.  *See* ECF No. [34] and ECF No. [49].

In the Amended Complaint, Plaintiffs allege that Plaintiff Porfi Baloa "is a Venezuelan musician, composer, producer[,] and arranger" who owns the "Venezuelan copyright[s]" to the albums titled "Reclamando Nuestro Espacio[,]" "Persona Ideal[,]" "La Misma Pluma[,]" "Ahora Mas Que Nunca[,]" "Búscame[,]" and "Sellos De Mi ADN[.]"  *See* ECF No. [49] at ¶¶ 20, 22. Plaintiffs allege that Defendants infringed upon their copyrights in these works by copying and incorporating "the musical composition, [] lyrics and[,] [] sound recording[s,]" *id.*, of those works — without Plaintiffs' authorization — into infringing music videos that they posted to Youtube.com, *see id.* at ¶¶ 22-30.  Plaintiffs also allege that Defendants created other, unspecified infringing "music videos" that copy and incorporate the "sound recordings" of Plaintiffs' other copyrighted works; Plaintiffs do not identify which of its copyrighted works Defendants copied and incorporated into the unspecified "music videos[.]"  *Id.* at ¶ 31.

Additionally, Plaintiffs allege that Defendants have accounts with various online streaming providers of music, video, and other audiovisual works, including (1) Spotify AB, (2) Apple, Inc.'s Apple Music, (3) Amazon.com, Inc.'s Amazon Music, (4) Pandora Media, LLC's Pandora, (5) Deezer S.A.'s Deezer.com, and (6) iHeartMedia, Inc.'s iHeart.com (hereinafter collectively referred to as the "Online Streaming Platforms").[1]  *See id.* at ¶¶ 41, 43, 45, 47, 51.  Plaintiffs claim

---

[1] "Online Streaming Platforms" also refers to Youtube.com.

that Defendants uploaded infringing works that copy and incorporate Plaintiffs' copyrighted musical compositions, lyrics, and sound recordings to the accounts they maintain with the Online Streaming Platforms.  *See id.* at ¶¶ 42, 44, 46, 48, 50, 52.

Based on these allegations, Plaintiffs raise six claims.  Count 1 is for direct copyright infringement against Korta Records Co., Luis F. Mendoza, and Leonor Mendoza; Count 2 is for direct copyright infringement against Edi Korta, LLC, Luis F. Mendoza, and Leonor Mendoza; Count 3 is for contributory copyright infringement against Korta Records Co., Luis F. Mendoza, and Leonor Mendoza; Count IV is for contributory copyright infringement against Edi Korta, LLC, Luis F. Mendoza, and Leonor Mendoza; Count V is for vicarious copyright infringement against Korta Records Co.; and finally, Count VI is for vicarious copyright infringement against Edi Korta LLC.  *See generally* ECF No. [49].  Korta Records, in turn, filed a Counterclaim against Plaintiffs asserting three claims: (1) federal trademark infringement in violation of Section 32 of the Trademark Act of 1946, 15 U.S.C. § 1114 (Count 1); (2) federal unfair competition and false designation of origin in violation of Section 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a) (Count 2); and (3) trademark dilution in violation of Section 495.151 of the Florida Statutes (Count 3).  *See* ECF No. [56] at 16-20.

After the close of discovery, the Parties filed numerous motions that are the subject of this Omnibus Order.  The first is Plaintiffs' Motion to Exclude Non-Damages Opinions, which is directed at striking any opinions by Defendants' expert, Leslie Zigel, that do not relate to the issue of damages, arguing that many of his opinions are not true rebuttal opinions and are instead untimely affirmative opinions.  *See* ECF No. [82].  Despite having ample time to file a Response in opposition, Defendants have yet to file one and the deadline to do so expired on May 20, 2025. *See* ECF No. [108].

Next, Defendants filed two motions seeking to strike Plaintiffs' experts.  The first is directed at striking Plaintiffs' handwriting expert, F. Harley Norwitch, because the report was disclosed after the close of discovery, *see* ECF No. [86], and the second is directed at striking Plaintiffs' expert on Venezuelan law, William Enrique Olivero Perez, because Plaintiffs never put Defendants and the Court on notice of their intent to raise matters of Venezuelan law and failed to timely disclose him as an expert witness, *see* ECF No. [119].  The Parties have since filed their respective Responses and Replies.  *See* ECF Nos. [96], ECF No. [105], ECF No. [123], and ECF No. [124].

Finally, Defendants filed their Motion for Judicial Notice, asking the Court to take judicial notice of specific copyright listings detailing U.S. copyright registrations for three of the six albums at issue in this case.  *See* ECF No. [88].  Plaintiffs have opposed this request in their Response, *see* ECF No. [104], and Defendants have filed their Reply, *see* ECF No. [110].  All four Motions are ripe for review.

## II.    LEGAL STANDARDS

### a.   Expert Witness Disclosures

"District courts have 'unquestionable' authority to control their own dockets."  *Smith v. Psychiatric Sol., Inc.*, 750 F.3d 1253, 1262 (11th Cir. 2014) (internal citation omitted).  "This authority includes 'broad discretion in deciding how best to manage the cases before them.'"  *Id*. (internal citation omitted).  Rule 26(a)(2) governing expert disclosures reinforces this principle. Specifically, subsection (a)(2)(D) requires that "[a] party must make [expert] disclosures at the times and in the sequence that the court orders."  *See* Fed. R. Civ. P. 26(a)(2)(D).  Subsections (a)(2)(B) and (C) explain which expert witnesses must provide a written report and which witnesses need not do so along with the details of what their respective disclosures must include.

*See* Fed. R. Civ. P. 26(a)(2)(B)-(C).  And subsection (a)(2)(D)(ii) contemplates that, absent a stipulation or court order that provides otherwise, following the disclosure of initial expert reports, a party may make additional expert disclosures "if the evidence is intended solely to contradict or rebut evidence on the same subject identified by another party under Rule 26(a)(2)(B) or (C)." *See* Fed. R. Civ. P. 26(a)(2)(D)(ii).

"Because the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise, compliance with the requirements of Rule 26 is not merely aspirational." *See Reese v. Herbert*, 527 F.3d 1253, 1266 (11th Cir. 2008) (quotation marks omitted).  For that reason, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).  Turning to the substance of the disclosures, "[a]n expert report must be complete to the point where opposing counsel is not forced to depose an expert in order to avoid ambush at trial; and moreover must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources." *Mustafa v. United States*, No. 21-CV-20633, 2022 WL 18023327, at *3 (S.D. Fla. May 16, 2022) (quotation marks omitted).

Courts in this District routinely strike expert disclosures, reports, and testimony as a sanction for failure to comply with Rule 26(a).  *See, e.g.*, *Brown v. NCL (Bahamas) Ltd.*, 190 F. Supp. 3d 1136, 1143 (S.D. Fla. 2016) (excluding expert's opinion that the plaintiff suffered a traumatic brain injury because the expert disclosure was incomplete and was not timely supplemented).  And the Eleventh Circuit routinely affirms a district court's decision to strike expert disclosures, reports, and testimony as a sanction for failure to comply with Rule 26(a).  *See,*

*e.g.*, *Reese*, 527 F.3d at 1266 (affirming the exclusion of an expert's affidavit because the party's "failure to comply with Rule 26(a) was both unjustified and harmful to the defendants"); *Romero v. Drummond Co.*, 552 F.3d 1303, 1323 (11th Cir. 2008) (affirming the exclusion of three expert witnesses because the disclosure reports for the witnesses did not comply with the requirements of Rule 26(a)(2)(B)); *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 825 (11th Cir. 2009) (affirming the grant of a "Motion to Strike the bases in support of" expert testimony that were "first disclosed during and following the *Daubert* hearing and not specifically referred to earlier in the Rule 26(a) report or the deposition"). The reason the Rules permit — and courts impose or enforce — such significant sanctions for failing to adequately disclose an expert or an expert report is because the "expert disclosure rule is intended" to "prevent surprise" and "to provide opposing parties reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." *See Reese*, 527 F.3d at 1265–66.

### b. Application of Foreign Law

"A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing." Fed. R. Civ. P. 44.1. "Foreign law is a fact to be pleaded and proved; and when the contrary is not alleged, the law of the sister state will be assumed to be the same as Florida law." *Stone v. Wall*, 135 F.3d 1438, 1442 (11th Cir. 1998); *see also Collins v. Collins*, 36 So. 2d 417, 417 (1948); *Bethell v. Peace*, 441 F.2d 495, 497 (5th Cir. 1971) (explaining that "the party relying on foreign law must plead and prove it" and, if a party fails to make such allegations in a party's pleadings or during the litigation as to what the relevant foreign law is, a district court is entitled to assume it is the same as the forum law).[2]

---

[2] All decisions of the former Fifth Circuit Court of Appeals handed down as of September 30, 1981 are "binding as precedent in the Eleventh Circuit." *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981).

Courts in this District have determined that an "other writing" under Rule 44.1 can, for example, take the form of a written disclosure provided to an opponent that an individual will provide testimony regarding the laws of another country, *see World Fuel Servs., Inc. v. M/V PARKGRACHT*, 489 F. Supp. 3d 1340, 1345 (S.D. Fla. 2020), or a written Rule 44.1 notice filed on the docket, *see De Fernandez v. Seaboard Marine, Ltd.*, No. 20-CV-25176, 2022 WL 2869730, at *9 (S.D. Fla. July 21, 2022).  Although a party must provide written notice of its intent to rely on foreign law, if a party intends to use an expert to explain that foreign law, it need not comply with the timing or disclosure requirements of Rule 26(a)(2).  *See World Fuel Servs.*, 489 F. Supp. 3d at 1345 (finding that, because Rule 44.1 applied to matters involving the determination of foreign law, the traditional expert report requirements of Rule 26(a)(2) did not apply to the disclosure of a foreign law expert).  This is because Rule 44.1 is the operative rule, not Rule 26(a)(2).  *See BCCI Holdings (Luxembourg), Societe Anonyme v. Khalil*, 184 F.R.D. 3, 9 (D.D.C. 1999) (concluding that "for questions of foreign law, Rule 44.1 of the Federal Rules of Civil Procedure, which permits expert testimony on such questions, controls" instead of Rule 26(a)(2)).  And "[t]he plain text of Rule 44.1 does not require foreign law experts disclosed under Rule 44.1 to comply with Rule 26."  *De Fernandez*, 2022 WL 2869730, at *9.

### c.  Judicial Notice

Courts may take judicial notice as a matter of evidence law, but it is "a highly limited process."  *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997).  This is because "the taking of judicial notice bypasses the safeguards which are involved with the usual process of proving facts by competent evidence in district court."  *Id.*  Under Federal Rule of Evidence 201(b), district courts may "take notice of certain facts without formal proof," but this is only in instances when "the fact in question is one not subject to reasonable dispute in that it is either (1) generally known

within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Id.* (quoting Fed. R. Evid. 201(b)). For instance, courts typically take judicial notice of things, such as scientific facts (when the sun rises or sets), geography (the boundaries of a state), and political history (the identity of the president in 1958). *Id.* Importantly, "courts may [also] take judicial notice of public records, such as a pleading filed in another court," for the purpose of establishing what the documents contain but "not the veracity of their contents." *Navarro v. City of Riviera Beach*, 192 F. Supp. 3d 1353, 1364 (S.D. Fla. 2016) (citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999); *Universal Express, Inc. v. U.S. SEC*, 177 F. App'x 52, 53 (11th Cir. 2006); *Klopfenstein v. Deutsche Bank Sec., Inc.*, 592 F. App'x 812, 816 n.5 (11th Cir. 2014) *Martin v. Hogue*, No. 11–CV–228–T–33MAP, 2011 WL 2894986, at *2 (M.D. Fla. July 20, 2011)).

## III.   DISCUSSION

### a.   <u>Plaintiffs' Motion to Exclude Non-Damages Opinions (ECF No. [82])</u>

Here, Plaintiffs seek to strike the opinions of Defendants' expert, Leslie Zigel ("Mr. Zigel"), that are not true rebuttal opinions, that is, opinions that do not rebut the damages calculations contained within the report of Plaintiffs' damages expert, Angel Lopez, Jr. ("Mr. Lopez"). *See* generally ECF No. [82]. They argue that Mr. Zigel's expert report, which was disclosed on the date rebuttal expert reports were due,[3] contains rebuttal damages opinions, but it also contains untimely affirmative opinions that address the merits of the case. *Id.* at 2. Specifically, the report contains opinions involving the legal analysis of Venezuelan contracts, opinions regarding the joint authorship doctrine, opinions regarding the statute of limitations under the Copyright Act, and various legal conclusions finding that Plaintiffs' claims are barred under

---

[3] The Court extended the deadline for the disclosure of rebuttal expert reports to February 25, 2025. *See* ECF No. [70]. Mr. Zigel's report was served on the deadline for such reports.

these theories. *Id.* at 3. Plaintiffs' primary basis for striking these opinions is that they are untimely affirmative expert witness opinions, which should have been disclosed on January 27, 2025 but were not. *Id.* at 4; ECF No. [66]. In addition, Plaintiffs argue that, even if the reports are not excluded as untimely, Mr. Zigel's opinions must be stricken because (1) he is not an expert on Venezuelan law, (2) his opinions regarding the recording contract are based on an unreliable foundation, and (3) his opinions consist of impermissible legal conclusions. *Id.* at 4-11.

Defendants' Response was originally due on May 5, 2025. The Parties jointly requested extensions of time to file their responses to various motions, including this one, and the Court gave the Parties until May 12, 2025 to do so. *See* ECF No. [95]. Defendants' Response is months past due, and Defendants have yet to file anything responding to this motion. Local Rule 7.1(c)(1) cautions litigants that the failure to file a response to a motion within fourteen days after service of the motion "may be deemed sufficient cause for granting the motion by default." S.D. Fla. L.R. 7.1(c)(1). *See James v. Wal-Mart Stores E., LP*, No. 18-CV-81325, 2019 WL 124308, at *1 (S.D. Fla. Jan. 8, 2019) (granting motion to compel "by default due to Plaintiff's failure to respond" as required by Local Rule 7.1(c)(1)); *Arrington v. Hausman*, No. 15-CV-62326, 2016 WL 782416, at *2 (S.D. Fla. Feb. 17, 2016) ("The Court therefore acts well within its discretion by dismissing this case without prejudice under its inherent power, pursuant to Southern District of Florida Local Rule 7.1(c), due to Mr. Arrington's failure to respond to the Defendants' motions to dismiss.") The Court, therefore, grants Plaintiffs' Motion to Exclude Non-Damages Opinions, ECF No. [82], by default for Defendants' failure to respond.

But the Court also grants the requested relief on the merits because Mr. Zigel's report is replete with affirmative opinions that were untimely served under the guise of a rebuttal report and Defendants have not made a showing of substantial justification or harmlessness for their untimely

disclosure.  Looking at the record, Plaintiffs timely disclosed the report of Mr. Lopez, a certified public accountant, who provided a damage calculation "caused by the unauthorized use by Defendants of Plaintiffs' sound recordings."  *See* ECF No. [82-1] at 4.  In doing so, Mr. Lopez reviewed "a report generated from Spotify's platform showing streams, and related royalties earned, by various songs owned by Plaintiffs since the songs were uploaded to the platform in 2014 through December 2024."  *Id.*  Mr. Lopez then mathematically computed the monthly average earned from the master sound recordings during this timeframe and multiplied that by the number of months since Defendants first started their alleged unauthorized use to determine the amount of royalties that Defendants received.  *Id.*  Mr. Lopez then made similar calculations for the amount of royalties collected from other streaming platforms, such as Apple Music, Deezer, YouTube and Pandora, using a 30% market standard and assuming that a distributor receives a 20% commission of the gross royalty amount.  *Id.* at 4-5.  Based on these assumptions, Mr. Lopez calculated Plaintiffs' damages at $2,673,654.59.  *Id.* at 5.

By contrast, four weeks after the deadline for expert witness disclosures, Defendants disclosed Mr. Zigel's "rebuttal" expert report.  The Court first notes that report does contain rebuttal opinions aimed at challenging Mr. Lopez's report, such as Mr. Zigel's opinions that "[t]he royalties [Plaintiffs] claim they are due are easily disproven by the actual accounting statements showing royalties received by Defendants," his calculations that "the net receipts received by Defendants from Believe equal $947,925.24," and that, at best, "the total amount payable would be $379,170.10, 40% of the net receipts from Believe."  *See* ECF No. [82-2] at 16.  However, the report contains numerous affirmative opinions that do not rebut Mr. Lopez's accounting calculation.  Indeed, the majority of the report that Mr. Zigel, an attorney, prepared reads much like a legal brief rather than a rebuttal damage calculation.  The report provides opinions regarding

the legal impact of a recording agreement on the ownership rights of the recordings at issue, *see* ECF No. [82-2] at 7 ("The scope of paragraph 10 is dispositive of the Recording Agreement with respect to ownership of the Korta Recordings and effectively this entire matter."), and whether the recording agreement establishes that the recordings qualify as a work for hire, *see* ECF No. [82-2] at 7 ("In U.S. copyright terms, this paragraph meets all the obligations of a work-for-hire provision."). The report also contains alternative opinions in the event the recording agreement is deemed to be invalid and provides opinions regarding Plaintiffs' Venezuelan copyright registrations and their impact on the legal issues in the case. *See* ECF No. [82-2] at 8 ("Clearly, the Plaintiff is in breach of the Recording Agreement by virtue of the fact that he fraudulently registered copyrights for materials, nearly twenty years following the commercial release of the Korta Recordings that he did not own according to the Recording Agreement and the pre-existing valid U.S. Copyright Registrations."). Mr. Zigel provides alternative opinions under the joint authorship doctrine, explaining that "even if the Recording Agreement and the U.S. Copyright Registrations were deemed to be invalid, the Defendants nonetheless still had statutory exploitation rights in the Korta Recordings under the Joint Authorship principle of the Copyright Act." *See* ECF No. [82-2] at 10. Finally, Mr. Zigel also provides legal opinions as to whether the statute of limitations has extinguished Plaintiffs' claims for relief in this action. *See* ECF No. [82-2] at 12 ("Thus, the assertions in Plaintiffs' Expert Report are conclusive proof that the statute of limitations bars the current copyright infringement suit."). The foregoing legal opinions all seek to foreclose Plaintiffs' claims from a liability perspective.[4] They do not seek to refute Mr. Lopez's

---

[4] The Court is striking the opinions because Defendants failed to oppose the Motion to Exclude and the opinions were untimely affirmative opinions. Therefore, the Court need not separately analyze Plaintiffs' alternative argument that Mr. Zigel's opinions lack a proper foundation and are impermissible legal conclusions under Federal Rule of Evidence 702 and that Mr. Zigel is not qualified to testify about matters under Venezuelan law.

damage calculation.  If Defendants wanted an expert to provide affirmative opinions bearing on the issue of liability, it was incumbent on them to timely do so, but they cannot cloak otherwise untimely affirmative opinions as "rebuttal" opinions.  *See All-Tag Corp. v. Checkpoint Sys., Inc.*, 408 F. Supp. 3d 1347, 1353 (S.D. Fla. 2019) (striking untimely affirmative opinions within rebuttal report, finding that the plaintiff "had plenty of time to gather experts and provide their reports in a timely manner.").  For these reasons, the Court finds that the non-damages opinions within Mr. Zigel's report are untimely and improperly designated as "rebuttal" and are thus subject to being stricken in accordance with Rule 37(c)(1).

Given the untimely disclosures, the Court must next consider whether the opinions should be stricken.  When a party fails to comply with Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  "'[T]he sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless.'" *Dyett v. North Broward Hosp. Dist.*, No. 03-CV-60804, 2004 WL 5320630, at *2 (S.D. Fla. Jan. 21, 2004) (quoting *Salgado v. General Motors Corp.*, 150 F.3d 735, 742 (7th Cir.1998)).  "Generally, when assessing whether there was substantial justification for the failure to disclose or whether the failure to disclose was harmless, courts consider four factors: (1) the importance of the excluded testimony; (2) the explanation of the party for its failure to comply with the required disclosure; (3) the potential prejudice that would arise from allowing the testimony; and (4) the availability of a continuance to cure such prejudice."  *Managed Care Sols., Inc. v. Essent Healthcare, Inc.*, No. 09-CV-60351, 2010 WL 1837724, at *4 (S.D. Fla. May 3, 2010) (quoting *Warner v. Ventures Health Care of Gainesville, Inc.*, No. 00-CV-308-Oc-10GRJ, 2001 WL 36098008, *1 (M.D. Fla. Aug. 1, 2001)).

Here, however, Defendants have not responded to the Motion to Exclude and have not, therefore, provided the Court with any information to analyze each of these factors. While the Court can make assumptions about the importance of the excluded testimony, the Court will not co-counsel Defendants and make arguments on their behalf. Similarly, the Court has no explanation as to why Defendants failed to disclose Mr. Zigel's opinions by the expert witness disclosure deadline or why the failure to timely disclose these opinions would not be prejudicial to Plaintiffs. Because Rule 26(a)(2)(B) places the duty on the party seeking to introduce the expert testimony, the Court sees no basis to find that Defendants had any substantial justification for this untimely disclosure or that the belated disclosure of affirmative opinions was harmless. *See United States v. Batchelor–Robjohns*, No. 03–CV-20167, 2005 WL 1761429, at *3 (S.D. Fla. June 3, 2005). Finding no substantial justification or lack of prejudice, Plaintiffs' Motion to Exclude Non-Damages Opinions, **ECF No. [82]**, is **GRANTED** and the opinions are **STRICKEN**. Specifically, the Court strikes Mr. Zigel's opinions in the sections entitled "Legal Distinction between Sound Recordings and Music Publishing," "Sound Recording Ownership and Control," "Royalty Obligations," "Joint Ownership Doctrine," and "Copyright Act Statute of Limitations." However, Mr. Zigel's true rebuttal opinions, found in the section entitled "Rebuttal of Plaintiff's Expert Report," remain intact.

### b.  Defendants' Motion to Strike Handwriting Expert (ECF No. [86])

Defendants, in turn, move to strike Plaintiffs' handwriting expert, F. Harley Norwitch ("Mr. Norwitch"), arguing that this expert and his report were untimely disclosed and that Plaintiffs cannot show any substantial justification for the belated disclosure or any harmlessness. *See* ECF No. [86]. In particular, Defendants explain that the deadline for expert witness disclosures was on January 27, 2025; yet, Plaintiffs waited six weeks (until March 13, 2025) to

amend their Initial Disclosures and disclose an unidentified "expert regarding signature on documents produced by Defendants" and then waited three more weeks and until after the close of discovery (on April 7, 2025) to produce Mr. Norwitch's report.  *See* ECF No. [86] at 2. Importantly, Mr. Norwitch provides opinions regarding the signatures on two documents — a Venezuelan copyright application that Defendants produced in September 2024 and a recording agreement that Defendants produced on January 24, 2025, three days before the expert witness disclosure deadline.  *See* ECF Nos. [86] at 3-4 and [86-1] at 4.

Plaintiffs, in turn, argue that their belated disclosure was substantially justified because they had requested all documents exchanged between Plaintiffs and Defendants as early as July 2024, but Defendants did not produce the recording agreement when due in August 2024 or with their Initial Disclosures and instead waited until the eve of the deadline for expert witness disclosures to produce it.  *See* ECF No. [96] at 2.  According to Plaintiffs, once they received the recording agreement, they made an inquiry in Venezuela to determine if the recording agreement was publicly recorded there and then Plaintiffs investigated potential handwriting experts, which explains why Plaintiffs' Amended Initial Disclosures served on March 13, 2025 did not identify a specific expert.  *See* ECF No. [96] at 2-3.  Plaintiffs also argue that the belated disclosure would not prejudice Defendants as they can still depose Mr. Norwitch if the Court reopens discovery for this purpose but that striking him as an expert would cause Plaintiffs significant prejudice.  *See* ECF No. [96] at 6-7.

Finally, in their Reply, Defendants clarify some factual allegations in Plaintiffs' Response, highlighting that Plaintiffs could have requested an extension for expert disclosures based on the timing of the recording agreement's production but did not.  *See* ECF No. [105] at 1-2.  They also argue that the importance of Mr. Norwitch's testimony does not outweigh the delay and prejudice

the untimely disclosure has caused them, that Plaintiffs failed to present a substantial justification, and that they will suffer real prejudice from the late disclosure. *See* ECF No. [105].

The Court starts its analysis with the undisputed fact that Mr. Norwitch's expert report, served on April 7, 2025, was not served by the expert witness disclosure deadline. Although Plaintiffs claim "the relevant discovery deadline was March 28, 2025," that is not the relevant deadline. The relevant deadline here was January 27, 2025 — the latest date to serve expert witness summaries or reports. Both parties refer to Mr. Norwitch as an expert, subjecting him to the expert witness disclosure requirements under Judge Leibowitz's Scheduling Order, ECF No. [66]. Indeed, Plaintiffs repeatedly refer to Mr. Norwitch as an "expert" in their Response. *See* ECF No. [96] at 3 ("During this time, the undersigned also investigated hand-writing *experts*. On March 13, 2025, Plaintiffs provided their Amended Initial Disclosures, listing Plaintiffs' *expert* regarding signature on documents produced by Defendants. . . Plaintiff's handwriting *expert* thereafter confirmed that the first signature . . .") (emphasis added). Accordingly, Mr. Norwitch's report was due on January 27, 2025, but it was not served until 11 weeks later and after the close of discovery.

With these facts in mind, the Court must consider whether Plaintiffs can still call Mr. Norwitch as a witness notwithstanding their failure to comply with the expert witness disclosure deadline. As explained above, courts must automatically exclude such evidence "unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless.'" *Dyett*, 2004 WL 5320630 at *2; Fed. R. Civ. P. 37(c)(1). When making this decision, courts consider various factors, such as "the importance of the excluded testimony," the explanation for the offending party's failure to comply with the disclosure, and "the potential prejudice that would arise from allowing the testimony." *Managed Care Sols.,* 2010 WL 1837724, at *4. The party

seeking to introduce the expert testimony under Rule 26(a)(2)(B) bears the burden to show substantial justification for the untimely disclosure and harmlessness. *See Batchelor–Robjohns*, 2005 WL 1761429 at *3.

Starting with the importance of the excluded testimony, Plaintiffs argue that Mr. Norwitch's report "is vital to the case." *See* ECF [96] at 5. Although Plaintiffs do not elaborate much on this point, the record reveals that Defendants have moved for summary judgment on the basis of the recording agreement, arguing it is dispositive of Plaintiffs' claims. This factor, therefore, does not weigh in favor of striking Mr. Norwitch as an expert witness.

Turning next to Plaintiffs' explanation for the untimely disclosure, they point the finger at Defendants for their belated production of the recording agreement three days before the expert witness disclosure deadline. However, this explanation fails to explain numerous shortcomings by Plaintiffs. It does not explain why Plaintiffs failed to seek an extension of time for the expert disclosure deadline upon their receipt of the recording agreement and instead waited 2.5 months and until after the close of discovery to produce Mr. Norwitch's report. The Parties requested other extensions of the pre-trial deadlines, which Judge Leibowitz granted, such as the original extension of the expert witness disclosure deadline, an extension of the discovery deadline, and an extension for the filing of pretrial motions. *See* ECF Nos. [65], [66], [72], [74], [80], and [81]. Yet Plaintiffs never sought an extension of the expert witness disclosure deadline based on the production of the recording agreement.

Likewise, Plaintiffs' Response does not explain why they failed to retain a handwriting expert sooner when they received one of the two documents on which Mr. Norwitch opines (the copyright application) in September 2024 — about four months before the expert disclosure deadline. Plaintiffs also do not explain why they waited to retain a handwriting expert until after

they determined whether the recording agreement was publicly filed in Venezuela even though Plaintiff Porfi Baloa ("Baloa") immediately advised his counsel that the signature on the recording agreement was not his.[5]  The inquiry about the public filing of the recording agreement was not a precursor to retaining a handwriting expert.  That is, Plaintiffs' challenge to his own signature on the recording agreement does not hinge on whether that agreement was publicly filed in Venezuela. Plaintiffs could have engaged a handwriting expert as soon as Baloa said the signature was not authentic.  Relatedly, Plaintiffs' Response does not explain why they waited until March 19, 2025 — eight weeks after they received the recording agreement and five months after they received the copyright application — to provide Mr. Norwitch with the two documents for his expert examination and opinion.  *See* ECF No. [86-1] at 4.

The Court notes that, as part of their substantial justification argument, Plaintiffs also fault Defendants for not producing a translated version of the recording agreement.  This argument is likewise unconvincing.  There is no requirement that a party translate documents they produce in discovery into English.  And even if that were a requirement, Mr. Norwitch was not interpreting the language within the document; he was analyzing Baloa's signature on the document. Regardless of whether the language in the recording agreement is in English or Spanish, the signature remains the same.  *See* ECF No. [86-1] at 11.  Given the foregoing, the Court concludes that the belated disclosure was not substantially justified.

The Court next addresses whether the untimely disclosure was harmless.  In their Response, Plaintiffs downplay this issue and suggest that Defendants have ample time to depose Mr. Norwitch and retain a rebuttal expert, if the Court so allows.  If the harmlessness analysis were as

---

[5] According to the Response, Plaintiffs' counsel conferred with Baloa about the recording agreement as soon as he learned of it and Baloa advised that he "did not recognize the document, nor the signature on the document that purported to be his signature."  *See* ECF No. [96] at 2.

simple as Plaintiffs suggest, then the deadlines in the Scheduling Order would be rendered meaningless.  With such a mindset, parties could ignore disclosure deadlines, disclose witnesses or experts after the close of discovery, and then simply point to the possibility that the Court can reopen discovery and allow depositions outside of the discovery period as evidence of harmlessness.  However, the deadlines in the "scheduling order set the expectations of the parties and the Court during the pretrial process, [so] such orders 'should not be ignored blithely nor trifled with, without some peril or consequence.'"  *See United States v. Marder*, 318 F.R.D. 186, 190 (S.D. Fla. 2016) (quoting *Hudson v. I.R.S.*, No. 03-C—172(TJM/RF), 2007 WL 2295048, at *10 (N.D.N.Y. Mar. 27, 2007)).  To be sure, following "deadlines is an essential part of lawyering." *Id.* at 194.  "'We live in a world of deadlines. If we're late for the start of the game or the movie, or late for the departure of the plane or the train, things go forward without us. The practice of law is no exception.  A good judge sets deadlines, and the judge has a right to assume that deadlines will be honored.'" *Id.* (quoting *Spears v. City of Indianapolis*, 74 F.3d 153, 157 (7th Cir.1996)).  Let there be no doubt that the Court's expert disclosure deadlines have meaning and Plaintiffs run the risk of exclusion of evidence when they ignore them.

Looking at the record, by the time Plaintiffs disclosed Mr. Norwitch's report, discovery (even the extended discovery deadline) had closed.  This prevented Defendants from (1) retaining a rebuttal handwriting expert, if they so chose, (2) propounding any written discovery to Plaintiffs regarding Mr. Norwitch, (3) deposing Mr. Norwitch, (4) subpoenaing a copy of his expert file, and (5) filing any appropriate *Daubert* motions aimed at excluding or narrowing his testimony.  In light of the foregoing, the Court concludes that Plaintiffs' belated disclosure and use of Mr. Norwitch's expert testimony to dispute the authenticity of Baloa's signature on a key piece of evidence for

Defendants is far from harmless.[6]

Upon review of the factors, Plaintiffs have proven neither a substantial justification for the 11-week delay in the disclosure of Mr. Norwitch's report nor harmlessness to Defendants. Accordingly, Defendants' Motion to Strike Handwriting Expert, **ECF No. [86]**, is **GRANTED.**

### c. <u>Defendants' Motion to Strike Venezuelan Law Expert (ECF No. [119])</u>

Next, Defendants move to strike the declaration of Venezuelan attorney, William Enrique Olivero Perez ("Perez"), which Plaintiffs attached as Exhibit 4 to their Statement of Material Facts in opposition to Defendants' Motion for Summary Judgment. *See generally* ECF No. [119]. Perez's declaration explains various aspects of Venezuelan law, such as Venezuelan contract interpretation and copyright law, including matters involving copyright ownership. *See* ECF No. [100-4]. Relying on Federal Rule of Civil Procedure 26(a)(2), Defendants originally sought to strike the declaration on the basis that "Plaintiffs never disclosed Perez as an expert or opinion witness," "such a report was improperly submitted as an attached declaration to Plaintiffs' OSF and well past the court's deadline to submit expert reports," and "because Defendants would be greatly prejudiced if the Court were to consider [Perez's declaration] without Defendants being able to depose him and or submit an opposing expert report." *See* ECF No. [119] at 3.

In their Response, Plaintiffs argued that (1) Perez's declaration on foreign law should not be stricken because it does not qualify as expert witness testimony under Rule 26(a)(2); (2) Defendants, not Plaintiffs, injected the issue of Venezuelan law into the litigation when they belatedly disclosed their intention to rely on the recording agreement (a Venezuelan contract); and

---

[6] Although Plaintiffs argue they will be prejudiced if Mr. Norwitch is not allowed to testify, that is not one of the factors to be considered here. *See* ECF No. [96] at 7. Rule 37(c)(2) requires exclusion of the evidence unless the untimely disclosure is substantially justified or harmless. This exclusionary rule does not contain an exception when the offending party establishes that the exclusion will prejudice it. Plaintiffs' argument turns the rule on its head.

(3) under Rule 44.1, courts may determine a matter of foreign law either through the evidence the Parties proffer and/or through their own resources.  *See* ECF No. [123] at 1-2.

Conceding their arguments under Rule 26(a)(2), *see* ECF No. [124] at 2 ("Defendants acknowledge the exceptions to Rule 26 for Rule 44.1 expert opinions on foreign law"), in their Reply, Defendants pivoted and sought to strike the declaration on different grounds[7] — on the basis of an untimely and prejudicial disclosure under Rule 44.1, *see generally* ECF No. [124]. Given Defendants' concession that Rule 44.1 governs this issue, instead of Rule 26(a)(2) as originally argued,[8] the Court focuses its analysis on the impact of Rule 44.1 on Perez's declaration.

Starting with its text, Rule 44.1 provides as follows:

A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing. In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law.

Fed. R. Civ. P. 44.1.  The purpose of requiring parties to give notice of their intent to raise an issue of foreign law is "[t]o avoid unfair surprise." *See* Fed. R. Civ. P. 44.1 (1966 advisory committee notes) ("To avoid unfair surprise, the *first sentence* of the new rule requires that a party who intends to raise an issue of foreign law shall give notice thereof."); *Grice v. A/S J. Ludwig Mowinckels,*

---

[7] Defendants' Motion to Strike only raised their Rule 44.1 argument in a footnote as they primarily relied on Rule 26(a)(2).  However, Plaintiffs discussed Rule 44.1 at length in their Response, making Defendants' arguments appropriate in their Reply.

[8] Even if Defendants persisted in their argument that Rule 26(a)(2) is the operative rule governing matters of foreign law, that would be incorrect.  The timing and disclosure requirements of Rule 26(a)(2) do not apply when a party intends to raise an issue of foreign law. *See World Fuel Servs.,* 489 F. Supp. 3d at 1345 (finding that the traditional expert report requirements of Rule 26(a)(2) do not apply to the disclosure of a foreign law expert); *BCCI Holdings,* 184 F.R.D. at 9 (explaining that Rule 44.1, not Rule 26(a)(2), controls questions of foreign law); *De Fernandez,* 2022 WL 2869730, at *9 ("The plain text of Rule 44.1 does not require foreign law experts disclosed under Rule 44.1 to comply with Rule 26.").

477 F. Supp. 365, 367 (S.D. Ala. 1979) (explaining the Rule 44.1 notice provision exists "simply to avoid surprise").

Rule 44.1 does not have a specific timing provision as to when a party is required to give notice of its intent to raise an issue of foreign law. *See generally* Fed. R. Civ. P. 44.1. As the advisory committee notes recognize, "in some cases the issue may not become apparent until the trial and notice then given may still be reasonable." Fed. R. Civ. P. 44.1 (1966 advisory committee notes). In deciding whether a party has reasonably given notice, courts may consider "the stage which the case had reached at the time of the notice, the reason proffered by the party for his failure to give earlier notice, and the importance to the case as a whole of the issue of foreign law sought to be raised." *Id.* And, "[i]f notice is given by one party it need not be repeated by any other and serves as a basis for presentation of material on the foreign law by all parties." *Id.*

Here, all Parties — Defendants included — ask the Court to apply Venezuelan law to certain issues in the case and both sides waited until after the close of discovery to do so. Despite this, both sides pass the buck to one another, arguing that the other should have given notice of foreign law. Plaintiffs blame Defendants for waiting to disclose the Venezuelan contract until the eve of expert witness disclosures, arguing that Defendants knew they intended to raise this contract, which requires the application of Venezuelan law, as a defense from the outset of the case. Defendants, on the other hand, argue that Plaintiffs should have known about their intention to apply foreign law from the inception of the case when they first raised matters involving Venezuelan copyrights. In fact, Defendants complain that "the cornerstone of both Perez's declaration and this case" "is the ownership of the copyrights at issue," *see* ECF No. [124] at 7, and that "allowing Plaintiffs to introduce Venezuelan law at this juncture of the litigation would

be highly prejudicial" to Defendants, requiring that Perez's declaration be stricken, *see* ECF No. [124] at 8.

Despite Defendants' strenuous arguments that Plaintiffs' notice of Venezuelan law through Perez's declaration was tardy and unreasonable, Defendants themselves ask the Court to apply Venezuelan law to the copyright issues in the case. The summary judgment record reveals it was Defendants who first raised the issue of Venezuelan foreign law, not Plaintiffs.  Defendants' Motion for Summary Judgment repeatedly asks the Court to apply Venezuelan law to the question of copyright ownership — the very issue Defendants complain that Plaintiffs improperly raised in Perez's declaration in response to that motion.  For example, Defendants argue that "under the Venezuelan Copyright Law, Korta Records is also considered, at the least, a joint author" and "federal courts have held that since the alleged copyright registrations are from Venezuela, then Venezuelan law 'determines the ownership and essential nature of the copyrights alleged to have been infringed." *See* ECF No. [83] at 9.  Similarly, Defendants cite to U.S. case law interpreting Venezuelan law to argue that "[u]nder Venezuelan Copyright Law ('VCL'), 'copyright ownership initially vests in a work's actual creator' and 'the copyright in works of joint authorship shall belong jointly to the coauthors." *See* ECF No. [83] at 10 (citations omitted).  Defendants then elaborate on their position, directing the Court in a footnote to "Law on copyright, Venezuela (Bolivarian          Republic          of),          WIPO          Lex.          (n.d.). https://www.wipo.int/wipolex/en/legislation/details/3989." *See* ECF No. [83] at 10, n.5.  At the conclusion of their argument under Venezuelan law, Defendants explain that "the Venezuelan copyright registrations themselves do not override the original author (or authors in this case) as deemed by the [Venezuelan Copyright Law]" and "this presumption is fully rebutted by the facts

discovered herein defining Korta Records as a joint author of the 6 LPS at issue under the [Venezuelan Copyright Law]." *See* ECF No. [83] at 11.

Given that Defendants raised the issue of Venezuelan law for the first time in their own Motion for Summary Judgment and Plaintiffs then responded to it with Perez's declaration, the Parties' accusations as to who should have raised this issue earlier are confounding, at best. Both sides agree that Venezuelan law is at issue and both sides seek to apply it to issues in this case. As the advisory committee notes to Rule 44.1 explain, when one party gives notice of its intent to raise an issue of foreign law, "it need not be repeated by any other and serves as a basis for presentation of material on the foreign law by all parties." Fed. R. Civ. P. 44.1 (1966 advisory committee notes). Thus, once Defendants raised these issues on summary judgment, Plaintiffs were not required to give notice of their intention to likewise raise issues of Venezuelan law. And Defendants certainly cannot argue — at least not credibly argue — that Perez's declaration on Venezuelan caught them by surprise and, therefore, prejudiced them when they injected issues of Venezuelan law on summary judgment.

Although Defendants could have supported their summary judgment arguments with their own declarations from an expert on Venezuelan law, they chose not do so. Instead, they chose to rely on federal case law interpreting Venezuelan law. Defendants' strategic decision on how to brief and present matters of Venezuelan copyright law on summary judgment does not constrain Plaintiffs — or this Court — from considering other sources of foreign law, such as the proffer of such law in Perez's declaration or the Court's resort to its own research and resources on Venezuelan law. *See* Fed. R. Civ. P. 44.1 ("In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence."). For the foregoing reasons, the Court finds that,

under Rule 44.1, there is no basis on which to strike Perez's declaration. Accordingly, Defendants'

Motion to Strike Venezuelan Law Expert, **ECF No. [119]**, is **DENIED**.

### d. Defendants' Motion for Judicial Notice (ECF No. [88])

Finally, Defendants ask the Court to take judicial notice of three copyright registrations

from the public catalog of the U.S. Copyright Office, consisting of registrations for the sounds

recordings of "Persona Ideal," "La Misma Pluma," and "Reclamando Nuestro Espacio." *See* ECF

Nos. [88] and [88-1]. Plaintiffs, for their part, object to the Court taking judicial notice of these

registrations from the public catalog, arguing that these are not certificates of copyright

registrations and the screenshots from the public catalog are not appropriately the subject of

judicial notice, that Defendants could have and should have obtained certified copies of the

certificates of registration and the specimen of the sounds recording provided to the U.S. Copyright

Office, that the entities that purportedly registered the copyrights were not in existence at the time

of the registrations, and that the cases on which Defendants rely to support judicial notice only

allow for such notice in the context of a motion to dismiss. *See* ECF No. [104].

As explained above, courts may take judicial notice of certain facts "as a matter of evidence

law," but it is "a highly limited process." *Shahar*, 120 F.3d at 214. Federal Rule of Evidence

201(b) allows district courts to "take notice of certain facts without formal proof" when "the fact

in question is one not subject to reasonable dispute in that it is either (1) generally known within

the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by

resort to sources whose accuracy cannot reasonably be questioned.'" *Id.* (quoting Fed. R. Evid.

201(b)). Public records are among the type of documents of which courts may take judicial notice,

but this is for the purpose of establishing what the documents contain and "not the veracity of their

contents." *Navarro*, 192 F. Supp. 3d at 1364.

CASE NO. 24-CV-20522-LEIBOWITZ/Elfenbein

Applying these principles to the copyright context, courts have accepted entries from the U.S. Copyright Office's Public Records System to confirm a litigant's copyrights. *See Nationwide Van Lines, Inc. v. Transworld Movers Inc.*, 853 F. App'x 604, 606 (11th Cir. 2021) (concluding that district could take "judicial notice of a public record from the registry of the United States Patent and Trademark Office" to resolve "who owned the mark."); *Brooks-Ngwenya v. Indianapolis Pub. Sch.,* 564 F.3d 804, 808 (7th Cir. 2009)(explaining that the district court could have taken judicial notice of the fact that the U.S. Copyright Office renewed an application, citing to http://cocatalog.loc.); *Beckman v. Regina Caeli, Inc.*, 752 F. Supp. 3d 1346, 1375 (N.D. Ga. 2024) ("The Court takes judicial notice that Kari's copyright registrations, bearing the same registration numbers, appear in the Copyright Office's online public catalog."); *Sternbaum v. Refinery Lab, LLC*, No. 22-CV-22002, 2022 WL 16745340, at *2, n.1 (S.D. Fla. Nov. 7, 2022) ("The Court takes judicial notice of the publicly recorded registration of the copyright which was recorded on September 24, 2020, before Defendant allegedly used Plaintiff's work on February 11, 2021. *See Registration Record VA0002219754*, Copyright Public Records System, https://publicrecords.copyright.gov/detailed-record/31882933 (last visited Nov. 3, 2022)."); *see also Island Software & Computer Serv., Inc. v. Microsoft Corp.,* 413 F.3d 257, 261 (2d Cir. 2005) (finding the district court did not err in taking judicial notice of unauthenticated copies of Microsoft's copyright registrations on summary judgment because the registrations were "published in the Copyright Office's registry").

Here, Plaintiffs argue that the information from the public catalog of the U.S. Copyright Office is insufficient because Defendants must provide formal proof of their copyright registrations (i.e. the certified copies of the copyright registrations). However, that would defeat the purpose of Rule 201(b), which allows courts to "take notice of certain facts without formal

proof" as long as "the fact in question is one not subject to reasonable dispute." *Shahar*, 120 F.3d at 214.  Defendants' submission of the three registrations from the public catalog of the U.S. Copyright Office is the type of informal proof courts can take judicial notice of because such information is a matter of public record and the accuracy of such information cannot be questioned. *See Nationwide Van Lines*, 853 F. App'x at 606; *Brooks-Ngwenya,* 564 F.3d at 808; *Beckman*, 752 F. Supp. 3d at 1375; *Sternbaum*, 2022 WL 16745340, at *2, n.1; *Island Software,* 413 F.3d at 261. And contrary to Plaintiffs' argument, judicial notice of these copyright registrations is not limited to the resolution of motions to dismiss.  Rule 201(b) is a rule of evidence that applies in the context of summary judgment and trial as well as a motion to dismiss.  *See Shahar*, 120 F.3d at 214 (explaining court may take judicial notice of facts "as a matter of evidence law"); *Nationwide Van Lines*, 853 F. App'x at 606 (finding no error in district court taking judicial on motion to dismiss); *Island Software,* 413 F.3d at 261 (finding no error in district court taking judicial notice in connection with motion for summary judgment); *Sternbaum*, 2022 WL 16745340 at *2 n.1 (taking judicial notice in the context of motion for default judgment).

Accordingly, the Court takes judicial notice of the publicly recorded registration of the copyright for the following sound recordings with the U.S. Copyright Office:

1. "Persona Ideal," which was registered on June 26, 1997. *See Registration Record SR0000237029*, Copyright Public Records System, https://publicrecords.copyright.gov/detailed-record/voyager_12963562 (last visited Dec. 8, 2025);

2. "La Misma Pluma," which was registered on February 25, 1999. *See Registration Record* SR0000261667, Copyright Public Records System, https://publicrecords.copyright.gov/detailed-record/voyager_12987903 (last visited

CASE NO. 24-CV-20522-LEIBOWITZ/Elfenbein

Dec. 8, 2025); and

3. "Reclamando Nuestro Espacio," which was registered on February 29, 1996.  *See Registration Record SR0000217389*, Copyright Public Records System, https://publicrecords.copyright.gov/detailed-record/voyager_12943972 (last visited Dec. 8, 2025).

## IV.   CONCLUSION

For the foregoing reasons, the Court **ORDERS** as follows:

1. Plaintiffs' Motion to Exclude the Expert Testimony of Defendants' Expert Leslie Zigel on all Non-Damages Topics, **ECF No. [82]**, is **GRANTED**.  Mr. Zigel's opinions in the sections entitled "Legal Distinction between Sound Recordings and Music Publishing," "Sound Recording Ownership and Control," "Royalty Obligations," "Joint Ownership Doctrine," and "Copyright Act Statute of Limitations" are **STRICKEN**.

2. Defendants' Motion to Strike Plaintiffs' Improper and Untimely Expert Report by Plaintiffs' Handwriting Expert, **ECF No. [86]**, is **GRANTED**;

3. Defendants' Motion to Strike Plaintiffs' Improper and Untimely Expert Report on Venezuelan Law, **ECF No. [119]**, is **DENIED;** and

4. Defendants' Request for Judicial Notice, **ECF No. [88]**, is **GRANTED**.

**DONE and ORDERED** in Chambers in Miami, Florida on December 10, 2025.

_____
**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc:  All Counsel of Record