## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CV-20522-LEIBOWITZ/Elfenbein

**VICTOR PORFIRIO BALOA DIAZ**,
*et al*,

      Plaintiffs,

v.

**EDI KORTA, LLC**, *et al*,

      Defendants.

_____/

## REPORT AND RECOMMENDATION ON DEFENDANTS' VERIFIED MOTION FOR FINAL SUMMARY JUDGMENT ON PLAINITFFS' COPYRIGHT CLAIMS

      **THIS CAUSE** is before the Court on Defendants Edi Korta, LLC, Korta Records Co., Luis F. Mendoza, and Leonor Mendoza's (collectively "Defendants") Verified Motion for Final Summary Judgment on Plaintiffs' Copyright Claims (the "Motion"), ECF No. [83].   The Honorable David S. Leibowitz referred this Motion to me for a Report and Recommendation.   ECF No. [102].   Having reviewed the Motion, the responses and the replies thereto, as well as the record[1] and relevant law, I **RECOMMEND** that the Motion, **ECF No. [83]**, be **DENIED**.

---

[1] The Court takes the information in this section from the full summary judgment record, including Plaintiffs' Amended Complaint, Defendants' Answers, Korta Record's Counterclaim, Plaintiffs' Answer to the Counterclaim, the Parties' statements of material fact, their responses to each other's statements of material fact, and the documentary evidence on the docket.  *See, e.g.*, ECF No. [36]; ECF No. [53]; ECF No. [54]; ECF No. [55]; ECF No. [56]; ECF No. [57]; ECF No. [60]; ECF No. [71]; ECF No. [83]; ECF No. [84]; ECF No. [85]; ECF No. [87]; ECF No. [97]; ECF No. [98]; ECF No. [100]; ECF No. [101]; ECF No. [109]; ECF No. [112]; ECF No. [113]; ECF No. [128]; ECF No. [129]; ECF No. [130]; *Zurich Am. Ins. Co. v. Nat'l Specialty Ins. Co.*, 246 F. Supp. 3d 1347, 1354–55 (S.D. Fla. 2017).  As required on summary judgment, the Court considers these "facts" in the light most favorable to the non-moving party — Korta Records on Plaintiffs' Motion, and Plaintiffs on Defendants' Motion.  *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006) ("Even though the facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case," a court's "analysis for purposes of summary judgment must begin with a description of the facts in the light most favorable to the" non-moving party. (citations and quotation marks omitted)).

## I.    BACKGROUND

This case centers on a dispute between Plaintiff Victor Porfirio Baloa Diaz ("Baloa"), a Venezuelan salsa musician and composer, and his former promoter and partner, Defendant Luis F. Mendoza ("Luis").   At the heart of the conflict lies a fractured, longstanding business relationship and the contested ownership over the music and brand associated with the band Adolescentes Orquesta (the "Band").   Since 1995, Baloa composed, arranged, and produced musical compositions and Luis manufactured, promoted, and distributed the music, each sharing in the profits therefrom.   This relationship ended in late 2010 when Baloa allegedly discovered that Luis misrepresented financial earnings and withheld royalties from Baloa.   On February 9, 2024, Plaintiffs Baloa and Porfi Music, LLC (collectively, "Plaintiffs") filed the instant action asserting claims for copyright infringement against Defendants Korta Record's Co. ("Korta Records"), Luis, Edi Korta, LLC ("Edi Korta"), and Leonor Mendoza ("Leonor") pursuant to the Copyright Act, 17 U.S.C. §§ 101, *et seq.* ("Copyright Act").   *See generally* ECF No. [1]; ECF No. [36].

### A.  Plaintiffs' Allegations

On September 20, 2024, Plaintiffs filed the operative Amended Complaint.   *See* ECF No. [36].   Therein, Plaintiffs allege that Baloa owns the Venezuelan copyright registrations covering the musical compositions, lyrics, and sound recordings for the albums: (1) Reclamando Nuestro Espacio; (2) Persona Ideal; (3) La Misma Pluma; (4) Ahora Mas Que Nunca; (5) Búscame; and (6) Sellos De Mi ADN (collectively, the "Albums").   *See id.* at ¶¶20, 22.   Plaintiffs state that Baloa granted Porfi Music, LLC ("Porfi Music") a license to "the intellectual property rights in the copyrights at issue in this lawsuit."   *See id.* at ¶4.   Plaintiffs allege that Defendants infringed

Baloa's copyrights by exploiting the sound recordings from the Albums (the "Recordings") via YouTube videos and online streaming platforms. *See id*. at ¶¶23-52.

As to the YouTube infringements, Plaintiffs allege that Defendants created and uploaded music videos to YouTube that incorporate, without Baloa's permission, all songs from the La Misma Pluma. *See id*. at ¶23. Plaintiffs also allege that Defendants uploaded the Recordings of several individual songs. *See id*. at ¶¶24-30. Plaintiff alleges that there are more music videos "tied to Defendants that incorporate [] Baloa's copyrighted sound recordings" but fails to plead them with any particularity. *See id*. at ¶31. As to the streaming platform infringements, Plaintiffs allege that Defendants have accounts with several music and video streaming platforms including Spotify, Apple Music, Amazon Music, Pandora, Deezer.com, and iHeart.com (hereinafter collectively referred to as the "Online Streaming Platforms").[2] *See id*. at ¶¶41, 43, 45, 47, 49, 51. Plaintiffs allege that Defendants have "copied, uploaded and used" the Recordings without permission on the Online Streaming Platforms. *See id*. at ¶¶42, 44, 46, 48, 50, 52.

Based on these allegations, Plaintiffs raise six claims. Counts I and II assert claims of direct copyright infringement against overlapping but distinct Defendants — Korta Records, Luis and Leonor (Luis and Leonor collectively as, the "Mendozas") in Count I, and Edi Korta and the Mendozas in Count II. *See id*. at ¶¶55, 64. Both counts allege that Defendants, individually or in concert, copied and incorporated Plaintiffs' Recordings — without permission — via the uploads to the Online Streaming Platforms. *See id*. at ¶¶55-57, 64-66. Plaintiffs contend that these actions violated their exclusive rights under the Copyright Act by reproducing, distributing, adapting, and publicly performing the works digitally. *See id*. at ¶¶56, 65.

---

[2] "Online Streaming Platforms" includes Youtube.com.

3

Counts III through VI assert claims of contributory copyright infringement (Count III against Korta Records and the Mendozas and Count IV against Edi Korta and the Mendozas) and vicarious copyright infringement (Count V against Korta Records and Count VI against Edi Korta) based on the same underlying conduct. *See id.* at ¶¶75-79, 89-93, 103-113, 119-129. Counts III through VI allege that the Mendozas, Korta Records, and Edi Korta, respectively, facilitated third-party infringement by uploading unauthorized copies of the Recordings to the Online Streaming Platforms, thereby enabling the public to stream or download the infringing works. *See id.* at ¶¶73–75, 87–89, 101–102, 117–118. Defendants allegedly induced, materially contributed to, and had the right and ability to supervise, the third parties listening to and downloading the Recordings. *See id.* at ¶¶73–81, 86–95, 104, 120. Plaintiffs also allege that Defendants derived a direct financial benefit from the infringing activity. *Id.* at ¶¶81, 95, 105–106, 121–122.

### B. Undisputed Facts[3]

In the 1990's, Luis started the Venezuelan record label, Producciones Korta Records C.A. (the "Record Label") and Edi Korta.[4] *See* ECF No. [84] at ¶¶1-2; ECF No. [100] at ¶¶1-2. In 1995, Luis, on behalf of the Record Label, engaged Baloa under the band name Adolescentes Orquesta. *See* ECF No. [84] at ¶3; ECF No. [100] at ¶3. On August 4, 1995, Baloa and Luis

---

[3] "All material facts in any party's Statement of Material Facts may be deemed admitted unless controverted by the other party's Statement of Material Facts, provided that: (i) the Court finds that the material fact at issue is supported by properly cited record evidence; and (ii) any exception under Fed. R. Civ. P. 56 does not apply." S.D. Fla. L.R. 56.1(c). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion…" Fed. R. Civ. P. 56(e). Anything not expressly disputed is deemed admitted if supported by the cited evidence. If not supported by the cited evidence, the fact is not included in this section unless labeled "disputed."

[4] The Court notes that there are many instances in which Plaintiffs indicate a fact included in Defendant's Statement of Material Facts is disputed, but the response to that statement of fact only disputes it in part. To the extent the record evidence supports any statements contained in Defendants' Statement of Material Facts, the Court has carefully reviewed each assertion of a disputed fact to determine whether the information Plaintiffs cite disputes the entirety of the statement, part of the statement, or none of it. To the extent the information only disputed part of the statement of fact, the remainder of it is deemed undisputed.

created a Venezuelan company called Adolescent's Orquesta, C.A. (the "Joint Company") *See* ECF No. [100] at ¶38;[5] ECF No. [100-7]. The Joint Company's Articles of Incorporation (the "Articles of Incorporation") memorialize that Luis owned 60 percent of the shares of the Joint Company and Baloa owned 40 percent of the shares. *See* ECF No. [100] at ¶39; ECF No. [100-7] at 8.

Prior to meeting Luis, Baloa created and recorded several songs that were rerecorded after Baloa joined the Record Label. *See* ECF No. [84] at ¶4; ECF No. [100] at ¶4. The Record Label paid at least some expenses in producing the Album; the amount paid, however, is disputed. *See* ECF No. [84-2] at 73:15-24; ECF No. [100-1] at ¶3; ECF No. [84] at ¶¶4-5; ECF No. [100] at ¶¶4-5. The Record Label manufactured and distributed CDs for the Albums. *See* ECF No. [84] at ¶¶8, 12, 17, 21, 24, 27; ECF No. [100] at ¶¶8, 12, 17, 21, 24, 27; ECF No. [85-1] at ¶¶7-9, 11, 14-16; ECF No. [100-1] at ¶¶5, 8, 9, 11, 14-16. The CDs of the Albums display the copyright symbol (©) and phonogram symbol (℗) followed by the name "Korta Record's" or "Korta Records S.A." or no name at all. *See* ECF Nos. [84-8] (illegible), [84-12], [84-17], [84-21], [84-24] (does not display a name after the copyright and phonogram symbols), [84-27]; ECF No. [84] at ¶¶8, 12, 17, 21, 24, 27; ECF No. [100] at ¶¶8, 12, 17, 21, 24, 27; ECF No. [84-8]; ECF No. [84-12]; ECF No. [100-1] at ¶¶5, 8, 9, 11, 14-16. Within five years of their respective publications, the Record Label applied for and obtained U.S. copyright registrations for the Recordings contained in Reclamando Nuestro Espacio, Persona Ideal, and La Misma Pluma. *See* ECF No. [84] at ¶¶8-9, 12, 14, 17-18; ECF No. [100] at ¶¶8-9, 12, 14, 17-18; ECF No. [84-10]; ECF No. [84-14]; ECF No. [84-18]. The Record Label collected royalties related to the exploitation of the Albums, and it paid Baloa

---

[5] Defendants did not file a Reply Statement of Material Facts controverting Plaintiffs' additional facts as required by Local Rule 56.1(a)(3), (b)(3). Accordingly, these facts are deemed admitted as long as they are supported by the record evidence. *See* S.D. Fla L.R. 56.1(c).

royalties related only to the exploitation of the compositions, score, and lyrics. *See* ECF No. [84] at ¶10, 15, 19, 22, 25, 28; ECF No. [100] at ¶10, 15, 19, 22, 25, 28; ECF No. [84-10]; ECF No. [84-11]; ECF No. [100-1] at ¶8.

In 2019, the Mendozas created Korta Records, the Florida entity and counterpart to the Record Label. *See* ECF No. [84] at ¶30; ECF No. [100] at ¶30. On January 19, 2019, the Record Label and Korta Records entered into a License Agreement whereby the Record Label granted Korta Records a non-exclusive license to use, distribute, and promote the "Adolescentes Orquesta" catalog. *See* ECF No. [84] at ¶31; ECF No. [100] at ¶31.[6] On March 19, 2021, Korta Records entered into a Distribution Agreement with Believe for the digital streaming of Recordings, including those contained in the Albums. *See* ECF No. [84] at ¶32; ECF No. [100] at ¶32. Since entering into the Distribution Agreement, Korta Records has collected royalties on the distribution of the Albums from Believe. *See* ECF No. [84] at ¶33; ECF No. [100] at ¶33. By the Spring of 2021, Baloa was aware that Korta Records was streaming the Albums at issue. *See* ECF No. [84] at ¶34; ECF No. [100] at ¶34.

## C. Defendants' Motion for Summary Judgment

In the Motion, Defendants focus their arguments on attacking Plaintiffs' proof of ownership, arguing first that Baloa transferred his rights in the Recordings via a Recording Agreement with the Record Label, asserting that U.S. law governs and Korta Records' financing and exploitation support ownership. *See* ECF No. [83] at 6-8. While Plaintiffs dispute the Recording Agreement's authenticity and Baloa's signature on the agreement, they contend

---

[6] Although Plaintiffs attempt to dispute this statement of fact, they only dispute whether Defendants' citation to certain pages from Luis's deposition testimony supports this statement. *See* ECF No. [100] at ¶31. Although Plaintiffs are correct that Luis did not testify about the agreement in these pages of his deposition transcript, Defendants also attached a copy of the License Agreement to support the statement of fact. Plaintiffs did not dispute the authenticity or admissibility of the License Agreement and the License Agreement supports Defendants' statement in paragraph 31. As a result, this fact is deemed admitted.

Venezuelan law controls under Florida choice-of-law rules and maintain that the Recording Agreement is invalid even if considered. *See* ECF No. [101] at 4-8. In their Reply, Defendants argue that the Recording Agreement can be considered because it is notarized and Baloa's counsel approved it and, alternatively, that the parties ratified the agreement through conduct. *See* ECF No. [109] at 2-4.

Second, Defendants posit that, absent a dispositive contract, Korta Records is at least a joint author under Venezuelan copyright law based on financing and production oversight and markings on album packaging, and that U.S. copyright registrations presumptively establish their ownership. *See* ECF No. [83] at 8-9. Plaintiffs answer that authorship under Venezuelan law turns on creative — not financial — contributions, that Luis provided no musical input, and that the cited symbols/registrations are merely declarative and inconsistent. *See* ECF No. [101] at 6-8.

Third, Defendants argue that any claims for copyright infringement fail because a joint owner can license the works and co-owners cannot infringe on each other's copyrights. *See* ECF No. [83] at 13-14. Fourth, Defendants seek judgment for Edi Korta, contending there is no record evidence of copying, inducement, material contribution, or direct financial benefit because it functioned only as a publishing arm for compositions, a point to which Plaintiffs offer no response. *See* ECF No. [83] at 15-16; *see generally* ECF Nos. [100] and [101]. Fifth and finally, Defendants argue the contributory and vicarious claims rise or fall with the direct claims, so summary judgment must be granted on those claims if the Court grants summary judgment on the underlying infringement theory. *See* ECF No. [83] at 16-18. The Court addresses each argument in turn below.

## II.      LEGAL STANDARD

### A.  Motions for Summary Judgment

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008).  And a fact is material if it "would affect the outcome of the suit under the governing law." *Id.*  The parties may support their positions by citations to the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  *See* Fed. R. Civ. P. 56(c)(1)(A).

The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.  *See Davis*, 451 F.3d at 763.  "Even though the facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case," a court's "analysis for purposes of summary judgment must begin with a description of the facts in the light most favorable to the" non-moving party. *See id.* (citations and quotation marks omitted).  "The mere existence of a scintilla of evidence in support of" the non-moving party's "position will be insufficient; there must be evidence on which the jury could reasonably find for the" non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  "Even when the parties agree on the basic facts, summary judgment is inappropriate if reasonable minds might differ on the inferences to be drawn from those facts." *Carlin Commc'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986).  The Court "may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied."

*Id.*; *see also Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007).

The moving party shoulders the initial burden to demonstrate the absence of a genuine issue of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If the movant satisfies this burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To do that, the non-moving party "must present evidence beyond the pleadings showing that a reasonable jury could find in its favor." *See Shiver*, 549 F.3d at 1343. This evidence can include the party's "own affidavits," along with "depositions, answers to interrogatories, and admissions on file." *See Zurich Am. Ins. Co.*, 246 F. Supp. 3d at 1355.

Still, the Court "cannot base the entry of summary judgment on the mere fact that" the non-moving party fails to respond to a fact or argument made by the movant "but, rather, must consider the merits of the motion." *See United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). Even where the non-moving party does not properly put any alleged material facts in controversy, the Court cannot grant summary judgment unless it "review[s] the full record on summary judgment," *Reese v. Herbert*, 527 F.3d 1253, 1271 (11th Cir. 2008), and is satisfied that the record "supports the uncontroverted material facts that the movant has proposed," *Zurich Am. Ins. Co.*, 246 F. Supp. 3d at 1355.

## B.  Copyright Infringement and Choice of Law

"'To make out a prima facie case of copyright infringement, a plaintiff must show that (1) it owns a valid copyright in the [work] and (2) defendants copied protected elements from the

9

[work].'"  *Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290 (11th Cir. 2011) (quoting *Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enters., Int'l*, 533 F.3d 1287, 1300 (11th Cir. 2008); *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1232–33 (11th Cir. 2010); *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.,* 499 U.S. 340, 361 (1991).  To satisfy the first prong, "'a plaintiff must prove that the work . . . is original and that the plaintiff complied with applicable statutory formalities.'"  *Latimer*, 601 F.3d 1224, 1232 (quoting *Bateman v. Mnemonics, Inc.,* 79 F.3d 1532, 1541 (11th Cir.1996) (internal quotations and citation omitted)).  Under U.S. copyright law, a "certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate."  17 U.S.C. § 410(c).  "'Once the plaintiff produces a certificate of registration, the burden shifts to the defendant to establish that 'the work in which copyright is claimed is unprotectable (for lack of originality).'"  *Latimer*, 601 F.3d at 1233 (quoting *Bateman,* 79 F.3d at 1541).

In cases of foreign works, the Eleventh Circuit in *Saregama* identified two key steps in the chain of title for the first prong: (1) determining the initial copyright owner; and (2) determining whether that owner transferred any exclusive rights.  *See* 635 F.3d at 1291-92; *see also RCTV Int'l Corp. v. Rosenfeld*, No. 13-CV-23611, 2016 WL 6818955, at *5 (S.D. Fla. Sept. 30, 2016).  The Eleventh Circuit determined that "[i]nitial ownership of a copyrighted work is determined by the laws in the work's country of origin."  *Saregama*, 635 F.3d at 1290 (quoting *Lahiri v. Universal Music & Video Distrib., Inc.*, 513 F. Supp. 2d 1172, 1176 n.4 (C.D. Cal. 2007); *accord Itar–Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 90 (2d Cir.1998)).  In addition to the Eleventh Circuit, the U.S. Copyright Office has also endorsed the country-of-origin *Itar–Tass* rule.  *See Compendium of U.S. Copyright Office Practices* § 102.6 (3d ed. 2014) ("copyright

infringement that occurs in the United States is governed by U.S. law[;] [h]owever, courts may look to the law of a foreign country where ownership of the work was established or transferred in cases where questions are raised concerning foreign ownership and copyright origin even in the context of a U.S. infringement action") (citing *Itar-Tass*, 153 F.3d at 88-92).

## III.  DISCUSSION

As discussed above, a prima facie case of copyright infringement requires evidence that the plaintiff (1) "owns a valid copyright in the [work] and (2) defendants copied protected elements from the [work].'" *Saregama*, 635 F.3d at 1290 (quoting *Peter Letterese & Assocs., Inc.*, 533 F.3d at 1300).  Defendants' Motion attacks the first element by challenging Plaintiffs' sole ownership of the Recordings and arguing that Defendants are joint authors and/or Plaintiffs transferred their rights to Defendants.  *See generally* ECF No. [83].  As the moving party, Defendants bear the burden of proving that it is undisputed that they, at least partially, own the Recordings.  For the reasons explained below, Defendants fail to meet this burden on each of their arguments.

### A.    The Recording Agreement

Defendants first argue that Baloa transferred his rights in the Recordings by entering into the Recording Agreement with the Record Label.  *See* ECF No. [83] at 6-8.  Defendants argue that the Recording Agreement should be interpreted under U.S. law based on their misreading of *Saregama*.  *See id.* at 7 (citing *Saregama*, 635 F.3d at 1290).  Further, Defendants contend that, to be valid, work-for-hire agreements under U.S. copyright law, the Parties must have signed them and accurately specify the creative works covered.  *See id*.  Defendants assert that the Recording Agreement satisfies these requirements.  *See id*. at 7-8.  Defendants also mention, in passing, that Korta Records' ownership of the Recordings "is logical in that Korta Records not only paid for the

costs of recording, but it also exclusively and openly handled marketing, promotion, distribution, and licensing of the [Recordings] . . ." *See id.* at 8.

Plaintiffs respond by disputing the validity of Baloa's signature on the Recording Agreement and the Recording Agreement's existence in general. *See* ECF No. [101] at 4-5. Plaintiffs cite to Baloa's Supplemental Declaration attesting that he had not seen this document before January 2025, the signatures Defendants claim are his are, in fact, forgeries, and he has never signed an agreement like the Recording Agreement. *See* ECF No. [100-1] at ¶6. Plaintiffs further argue that, under Florida conflict-of-law rules, the Recording Agreement must be interpreted under Venezuelan law. *See id.* at 7-8. Plaintiffs go on to apply Venezuelan copyright law ("VCL") to the terms of the Recording Agreement, arguing that the Recording Agreement's terms are invalid under VCL. *See id.* at 9-11.

In their Reply, Defendants argue that a notarization of Baloa's signature and a stamp showing that his lawyer received and approved the Recording Agreement support its authenticity, as referenced in deposition testimony. *See* ECF No. [109] at 2. Interestingly, Defendants mostly side-step Plaintiff's argument, and contradict their own, adding the new argument that even if the Recording Agreement's validity is disputed, the Recording Agreement's terms are nonetheless valid based on the Parties' ratification of the agreement through conduct. *See id.* at 3-4.

Defendant's principal argument and cited factual support do not eliminate the material factual conflict established by Baloa's Supplemental Declaration in which he disavowed ever signing or seeing this agreement prior to its production in this lawsuit and affirmatively stated that the signatures on the Recording Agreement are forgeries.[7]  *See* ECF No. [101] at 4-5; ECF No.

---

[7] Plaintiffs also dispute the validity and existence of the Recording Agreement on other grounds, such as by pointing to the expert opinion of Frank Norwitch, a handwriting expert who opines that one of Baloa's purported signatures on the document is a forgery. *See* ECF No. [101] at 5. However, the Court has since

[100-1] at 4.  Defendants' reliance on testimony in their Reply that a lawyer named Daniel Farina represented Baloa and that the Recording Agreement bears a notarization and counsel's stamp is insufficient to foreclose the factual dispute that Baloa's sworn denial of his signature creates.  The presence of a notary seal or attorney acknowledgment may support the credibility of Defendants' position, but it does not eliminate a genuine issue of material fact when directly contradicted by competent testimony.   In making these arguments, Defendants ask the Court to weigh the conflicting positions and determine whether Baloa signed the Recording Agreement that Defendants seek to enforce against him.  But the Court "may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied." *Carlin Commc'n*, 802 F.2d at 1356.  Because this conflict concerns a material fact — whether a valid, executed contract exists — a reasonable jury could find in Plaintiffs' favor, thereby creating a genuine dispute precluding summary judgment.  *See Miccosukee*, 516 F.3d at 1243 (explaining that an issue is genuine if a reasonable trier of fact could return judgment for the non-moving party); *Carlin*, 802 F.2d at 1356 (finding that summary judgment is inappropriate where reasonable minds might differ on the inferences from the facts); *Skop*, 485 F.3d at 1140 (stating that a court may not weigh conflicting evidence to resolve disputed factual issues).  Having determined that a genuine dispute of material fact exists on the threshold question as to whether the Recording Agreement is a valid and enforceable contract, the Court need not reach the remaining issues of contract interpretation and conflict-of-law analysis involving the Recording Agreement.

Nor is the Court required to address Defendants' new contract ratification argument raised for the first time in their Reply in which they assert that the Recording Agreement is valid

---

stricken Mr. Norwitch's opinions as untimely disclosed.  *See* ECF No. [137].  Plaintiffs also argue that the Recording Agreement was allegedly signed on May 15, 1995, but the Band was not created until August 4, 1995 — more than three months later, further supporting that the Recording Agreement is not a valid agreement.  *See* ECF No. [101] at 6.

regardless of Baloa's signature based on the "the Parties' consistent compliance with the terms of the Recording Agreement." *See* ECF No. [109] at 3. In their Motion, Defendants, at best, made a passing reference to this argument in a single sentence to support their claim that Baloa transferred all rights and interests in the Recordings by noting that Korta Records managed and paid for the costs of recording, marketing, promotion, distribution, and licensing of the Recordings. *See* ECF No. [83] at 8. But the argument of contract ratification itself is not developed anywhere in the Motion. *See generally* ECF No. [83].

A movant "forfeits an issue when [he] raises it in a perfunctory manner without supporting arguments and authority." *Harner v. Comm'r of Soc. Sec.*, 38 F.4th 892, 899 (11th Cir. 2022) (quotation marks and citation omitted); *see also Singh v. United States Atty. Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009) ("[A]n appellant's simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue on appeal.") (citation omitted); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) (same). "There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (citing *Blue Cross & Blue Shield v. Weitz,* 913 F.2d 1544, 1550 (11th Cir.1990)); *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012). "Rather, the onus is upon the parties to formulate arguments." *Id*. (citing *Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.,* 10 F.3d 1563, 1568 (11th Cir.1994)). Here, the lack of any developed argument on the issue of contract ratification in the Motion prevented Plaintiffs from discerning the factual and legal foundations of Defendants' argument. Indeed, given Defendants' failure to properly raise this issue in the Motion, Plaintiffs' Response understandably fails to address or mention the Parties'

conduct in terms of ratification.

In their Reply, Defendants pivoted in response to Plaintiffs' challenge to the validity of the Recording Agreement and argued for the first time, without citing to a single case or authority, that the "Recording Agreement is nonetheless valid as determined by the undisputed conduct of the parties acting under the terms of same." *See* ECF No. [109] at 3-4.  The Reply explains in detail why, according to Defendants, the evidence supports such a finding of ratification.  *See* ECF No. [109] at 3-4.  However, "Rule 7.1(c) of the Local Rules of the Southern District of Florida provides that a reply memorandum 'shall be strictly limited to rebuttal of matters raised in the memorandum in opposition without re-argument of matters covered in the movant's initial memorandum of law.'" *Lage v. Ocwen Loan Servicing LLC*, 145 F. Supp. 3d 1172, 1181 (S.D. Fla. 2015), *aff'd*, 839 F.3d 1003 (11th Cir. 2016) (quoting S.D. Fla. L.R. 7.1(c)).  "Thus, '[a] reply memorandum may not raise new arguments or evidence . . .'" *See id.* (quoting *Baltzer v. Midland Credit Mgmt., Inc.*, No. 14–CV-20140, 2014 WL 3845449, at *1 (S.D. Fla. Aug. 5, 2014)). Given Plaintiff's failure to raise the contract ratification argument in their Motion and their attempt to inject it for the first time in their Reply, the Court need not, and should not, consider this argument on summary judgment.

**B.**     **Joint Authorship Under Venezuelan Law and Defendants' U.S. Copyright Registrations**

Defendants' secondary argument proposes that, even if the Recording Agreement is non-dispositive, Plaintiffs' copyright infringement claims fail because: (1) Korta Records is a joint author under VCL; and (2) Defendants' U.S. copyright registrations evidence Defendants' ownership of the Recordings as a matter of law.  *See* ECF No. [83] at 8-9.

### 1.    *Joint Authorship Under Venezuelan Law*

Defendants argue that Korta Records is, at least, a joint author in the Recordings because (1) it financed and oversaw the production, manufacturing, and distribution of the Recordings and (2) it is "listed as the copyright claimant on [the] physical cop[ies]" of the Recordings.  *See* ECF No. [83] at 10.  In support of the first issue, Defendants cite to Luis's testimony stating that Korta Records paid to produce the Recordings, but they failed to include in the record any of the purported receipts referenced by Luis in his testimony.  *See id*.; *see also* ECF No. [128] at 20:7-21:5, 50:7-18, 63:7-16, 63:23-64:1, 65:16-25.[8]  Defendants also fail to provide or apply Venezuelan, or any, law on the issue of whether financial, rather than artistic contributions, creates joint authorship.  In support of the second issue, Defendants provide photos of the physical albums of the Recordings that display the copyright symbol © and the Venezuelan phonogram symbol ℗.  *See* ECF Nos. [84-8] (illegible), [84-12], [84-17], [84-21], [84-24], [84-27] (the photo cuts out where © and ℗ would be).  Several of the photos of the Albums are illegible or have varying names that follow the copyright symbols, (*i.e.* "Korta Record's" or "Korta Records S.A." or no name at all) for which Defendants provide no explanation.  *See* ECF Nos. [84-8] (illegible), [84-12], [84-17], [84-21], [84-24] (does not display a name after the copyright and phonogram symbols), [84-27].  Interestingly, the only law Defendants provide on the significance of either of these symbols and what type of ownership interest they provide states that "[t]he present registration is merely optional and declarative, and does not constitute a right.  Registration of a work, product, or

---

[8] Defendants' Motion and Statement of Material Facts cite to numerous pages of deposition transcripts without supplying the complete transcripts.  *See generally* ECF Nos. [83] and [84].  Accordingly, on June 24, 2025, the Court ordered Defendants to file complete deposition transcripts for the depositions of Defendants Luis F. Mendoza and Leonor Mendoza, and Plaintiff Victor Porfirio Baloa Diaz.  On June 24, 2025, Defendants filed the complete deposition transcripts in the record.  *See* ECF Nos. [128], [129], and [130].

production does not prejudge the original nature of what has been declared as a work, nor its author or owner." *See* ECF No. [83] at 11 (quoting ECF No. [84-34]).

Plaintiffs respond to the first argument by explaining that Baloa "arranged and paid for the majority of costs to create the [Recordings]" and that Luis cannot be considered a joint author because he "is not a musician, does not play any musical instruments, and did not write any of the songs." *See* ECF No. [101] at 6-7. Plaintiffs argue that under VCL, Baloa, as author and creator of the Recordings, is the owner of the rights. *See id*. at 8. To support their position under VCL, Plaintiffs provide the Declaration of William Enrique Olivero Perez (the "Perez Declaration"), a Venezuelan lawyer, in which he explains various code provisions of VCL that apply to the arguments on summary judgment and attaches Venezuelan case law. *See* ECF No. [100-4]. To support their argument from a factual standpoint, Plaintiffs refer to Luis's testimony wherein he states he does not play musical instruments, read music, and has never sung in a band. *See* ECF No. [128] at 13:7-13. Plaintiffs' Statement of Material Facts cites to Luis's testimony in which he states that Baloa and other hired musicians would play the instruments for the Recordings. *See* ECF No. [100] at ¶43 (citing ECF No. [100-6]). Plaintiffs also cite to third-party declarations stating that Luis did not make musical or artistic contributions on the Recordings. *See id*. at ¶42 (citing ECF Nos. [100-8], [100-9]).

Defendants' Reply makes the circular argument that they "are not arguing that the copyright symbol alone proves their ownership, but rather their involvement in the production and distribution of the six albums CDs, which each include prominent displays of copyright claims by Korta Records." *See* ECF No. [109] at 8-9. Defendants agree with Plaintiffs' recitation of VCL and refer to Article 7, which they argue makes the named author on the work, Korta Records, the presumed rights holder. *See id*. at 5, 8.

Looking first at the law that applies to copyright ownership, the Partes agree that VCL governs the initial ownership and the creation of the copyright rights.  *See id*. at 9-10; ECF No. [101] at 6, 7, 12-13.  Moreover, application of VCL to this issue is consistent with Eleventh Circuit precedent recognizing that the law of the country of origin governs such matters.  *Saregama*, 635 F.3d at 1290 (quoting *Lahiri v. Universal Music & Video Distrib., Inc.*, 513 F. Supp. 2d 1172, 1176 n.4 (C.D. Cal. 2007); *accord Itar–Tass*, 153 F.3d at 90.  In addition to the Eleventh Circuit, the U.S. Copyright Office has also endorsed the country-of-origin *Itar-Tass* rule.  *See Compendium of U.S. Copyright Office Practices* § 102.6 (3d ed. 2014) ("copyright infringement that occurs in the United States is governed by U.S. law[;] [h]owever, courts may look to the law of a foreign country where ownership of the work was established or transferred in cases where questions are raised concerning foreign ownership and copyright origin even in the context of a U.S. infringement action") (citing *Itar-Tass*, 153 F.3d at 88-92).  And to determine foreign law, Federal Rule of Civil Procedure 44.1 provides that "the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence."  To that end, the Court may consider federal case law discussing VCL as well as the Perez Declaration.

Upon review of VCL and the Parties' submissions, the Court concludes that Defendants' two theories of joint authorship fail because: (1) Defendants failed to show that financing and overseeing the production, manufacturing, and distribution of the Recordings makes Korta Records a joint owner under VCL; and (2) Defendants failed to show that being listed as the copyright claimant on the Recordings makes Korta Records a joint owner under VCL.  *See* ECF No. [83] at 10.  The Court will address each issue in turn.

As to the first theory, under VCL, copyright ownership initially vests in a work's actual creator, not the hiring party, and any transfer to the hiring party must be in writing.  In *RCTV Int'l Corp. v. Rosenfeld*, the district court analyzed the specific issue of joint authorship under VCL. No. 13-23611-CIV, 2016 WL 6818955, at *11 (S.D. Fla. Sept. 30, 2016).  The court interpreted VCL as vesting copyright ownership in the author upon creation.  *See id.*  The court explained that although VCL does not explicitly say the author is the initial owner, the court found that Articles 5, 6, 10, and 50, read together, make this implication unmistakable.  *See id.*  Article 5 grants the author "inalienable, unattachable, unrenounceable and imprescriptible" rights to the work "by virtue of the mere fact of his creative act," and Article 6 defines that act as the "realization of the author's thought."  *See id*.  Articles 10 and 50 reinforce the conclusion that ownership vests in the author at the moment of creation, Article 10 provides joint ownership to coauthors, and Article 50 provides that exploitation rights revert back to the author when a license expires.  *See id*. Moreover, the court rejected the plaintiff's argument that Article 59 vests initial ownership in the hiring party.  *See id*.  Instead, Article 59 operates as an assignment or transfer of exploitation rights to the hiring party.  *See id*.  The court concluded that under VCL, the actual creator of a work is its copyright's initial owner.  *See id*. at 12.  Article 9 of the VCL, on which Defendants rely, contemplates that "[a] work to the creation of which two or more natural persons have ***contributed*** shall be considered a work of joint authorship."  *See* ECF No. [109] at 9 (emphasis added). Accordingly, based on the Court's review of VCL, it concludes that persons who make creative contributions to the works hold original ownership of their works from the moment of creation.

Defendants do not argue that Korta Records or Luis made creative contributions to the Recordings, only that Korta Records financed their production.  As stated in *RCTV*, a hiring or financing party merely presumes an assignment of exploitation rights, not original ownership

19

CASE NO. 24-CV-20522-LEIBOWITZ/Elfenbein

under Article 59.  *See id*.  The VCL draws a clear distinction between creative contribution and financial investment, and Defendants cite no Venezuelan authority suggesting that funding or overseeing production constitutes authorship.  Merely financing or managing production, as Defendants allege Korta Records did, does not amount to the "creative act" required for authorship under Articles 5 and 6 of the VCL.  Defendants failed to meet their burden of pointing to, and proving, this issue of foreign law.  Given that Defendants failed to argue (or present any evidence) that they made any creative contributions to the Recordings, they cannot be original owners or joint authors under VCL; they can only be the assignees of exploitation rights.  Accordingly, because Korta Records' alleged contributions were financial and administrative — not creative — and because VCL vests authorship exclusively in the actual creator, Defendants have failed to establish that Korta Records is a joint author of the Recordings.  Even if VCL granted ownership rights to financing parties, whether and the extent to which Defendants financed the production of the Recordings is highly disputed, making summary judgment on the question of joint authorship on this basis improper.  *See* ECF No. [84-2] at 73:15-24; ECF No. [85-1] at ¶¶5, 9, 11, 14, 15 16; ECF No. [100-1] at ¶3; ECF No. [84] at ¶¶4-5; ECF No. [100] at ¶¶4-5.

Nor would Article 59 provide support sufficient to grant summary judgment in Defendants' favor. To recap, Article 59 states "[i]t shall be presumed . . . that the authors of works created in the course of employment relations . . . have *assigned* to [the hiring party] ... the exclusive right to exploit [the work]."  *See RCTV Int'l Corp.*, 2016 WL 6818955, at *11 (quoting Art. 59 VCL).  As previously stated, in *RCTV*, the court explained that Article 59 articulates a transfer of exploitation rights.  2016 WL 6818955, at *11.  And the Perez Declaration explains that Article 53 requires that "contracts for the transfer of exploitation rights and license agreements must be in writing."

20

*See* ECF No. [100-4] at 11(f).  Given the contested Recording Agreement, there is no undisputed written transfer of the exploitation rights, so summary judgment is not warranted on this basis.

As to the second theory, Defendants failed to show that being listed as the copyright claimant on the Recordings makes Korta Records a joint owner under VCL.  Defendants rely on the inclusion of copyright symbols (©) or phonogram symbols (℗) on the physical CDs for the proposition that these symbols, as a matter of law, make Korta Records an owner.[9]  Defendants' own interpretation of VCL demonstrates the contrary.  To support their argument, Defendants rely on Article 107 of the Venezuelan Author's Right Act[10] displayed on the Venezuelan copyright registrations.  *See* ECF No. [83] at 11.  Article 107 states that "[i]t is presumed, ***unless otherwise proven***, that the individuals listed as applicants enjoy the exclusive copyright.  The present registration is merely optional and declarative, ***and does not constitute a right***."  *See id.* (quoting ECF No. [84-34] (Venezuelan copyright registrations)) (emphasis added).  Indeed, Defendants argue that this provision stands for the proposition that Venezuelan copyright registrations do not supersede the original authorship recognized by VCL, and their validity can be challenged with evidence.  *See id.*  The Perez Declaration explains that any inclusion of a name or symbol, such as ℗, within the artwork or packaging of a phonogram "should be understood as a declarative presumption, but not constitutive of the right."  *See* ECF No. [100-4] at ¶11(c).  Accordingly, the Parties do not dispute that under VCL, copyright and phonogram rights originate with the act of creation and valid transfer agreements — not from any formal notice or marking.

The Perez Declaration expands on this issue under VCL.  It explains that Article 1 of the VCL provides that "'[t]he rights recognized in this Law are independent of the ownership of the

---

[9] The inconsistencies in the album markings — some illegible, some lacking names, and others using varying designations of "Korta Records" — further undermine Defendants' argument.

[10] Defendants incorrectly refer to this provision as Article 7.  *See* ECF No. [109] at 5, 7, 8.

material object in which the work is incorporated and are not subject to compliance with any formality.'" *See id*. at ¶8 (quoting Art. 1 VCL). Likewise, Article 5(2) of the Berne Convention — binding on Venezuela and the U.S. — confirms that "the enjoyment and exercise of these rights shall not be subject to any formality." *See id*. (quoting Art. 5, ¶2, Berne Convention). Additionally, Article 41 of VCL defines reproduction as "the material fixation of the work by any form or procedure that allows it to be known to the public or obtain copies of all or part of it," while Article 42 of VCL prohibits the communication, reproduction, or distribution of a work "without the consent of the author or, where applicable, of his or her successors in title." *See id*. at 11(d)-(e) (quoting Arts. 41–42). These provisions make clear that any lawful phonographic production or distribution requires a valid fixation contract or license from the rights holder, and that such rights arise from authorship and contractual transfer — not from the mere display of a symbol. Finally, Article 50 of VCL reinforces that exploitation rights "may be transferred free of charge or for a fee; however, they revert to the author or his or her successors in title upon termination of the assignee's right." *See id*. at 11(f).

Taken together, the Parties' interpretation of VCL and the VCL provisions themselves, demonstrate that the © or ℗ symbols merely serve an informative, non-constitutive function. Defendants' invocation of the declarative nature of Venezuelan copyright registration misconstrues the effect of the presumptive symbols to incorrectly mean that, as a matter of law, Korta Records is an owner. While registration is indeed optional and non-constitutive, this principle applies equally to all parties and does not negate the fact that, under VCL, authorship vests in the creator of the work. And since VCL contemplates the rebuttal of the ownership of the individuals listed as applicants of a copyright, the © or ℗ symbols do not make Defendants joint authors as a matter of law. Nor do the presence of such symbols establish transfer of rights, as

VCL requires contracts for the transfer of exploitation rights and license agreements to be in writing. *See id*. at 11(f) (citing Art. 53). Accordingly, these symbols, without an undisputed written transfer agreement, do not foreclose the genuine issue of material fact that Defendants are joint authors or transferees of the Recordings.

### 2.   *Defendants' U.S. Copyright Registrations*

Defendants also argue that Plaintiffs have failed to rebut Korta Records' valid U.S. copyright registrations on three of the six Albums. *See* ECF No. [83] at 11. Defendants argue that "[o]nce a party has produced a valid copyright registration, the burden shifts to the other party to establish that the copyright is invalid." *See id*. (citing *Latimer*, 601 F.3d at 1233). Defendants' reliance on *Latimer* is misplaced. The rebuttable presumption of validity discussed in *Latimer* serves to assist a plaintiff in satisfying the first prong of a *prima facie* case of copyright infringement. *See Latimer*, 601 F.3d at 1233 (explaining that a certificate of registration made within five years of the work's creation establishes a rebuttable presumption that the plaintiff has a valid copyright at which point the burden shifts to the defendant). This does not operate as a defensive mechanism to bar a plaintiff's infringement claim merely because another party holds a separate registration. *Latimer* does not hold that the mere existence of a copyright registration, standing alone, defeats a competing ownership claim at the summary-judgment stage.

Moreover, even assuming that Korta Records' U.S. registrations confer a rebuttable presumption of validity, that presumption does not end the inquiry. As *Latimer* and § 410(c) make clear, the presumption is rebuttable and may be overcome by competent evidence. Here, Plaintiffs have introduced record evidence creating a genuine dispute of material fact as to the ownership of the Recordings and whether any rights were validly or sufficiently transferred. *See* Sections III.A and III.B(1) *supra*. Accordingly, summary judgment is inappropriate on this record.

### C.  License to Exploit and Joint Authorship Under U.S. Law

Defendants argue that even if Baloa is deemed a co-author of the Recordings, any alleged infringement is negated because another joint author or rights holder lawfully licensed the works to Defendants. *See* ECF No. [83] at 13-14. They further contend that Defendants' U.S. copyright registrations and the principle of joint authorship under U.S. law undermine Plaintiffs' claim of sole ownership and the validity of Plaintiffs' later-filed Venezuelan registrations, and that, as co-owners, Plaintiffs cannot sue for copyright infringement since one co-owner cannot infringe another's rights. *See id.* Defendants' argument fails for several reasons.

As explained above, the Parties agree — and Eleventh Circuit precedent confirms — that VCL governs the questions of ownership and joint authorship of the Recordings at issue. *See* ECF No. [109] at 9-10; ECF No. [101] at 6, 7, 12-13; *Saregama*, 635 F.3d at 1290. Accordingly, Defendants' reliance on U.S. copyright law and domestic co-ownership principles is misplaced and legally improper in this context. The governing law of Venezuela, not the United States, determines whether the alleged co-authors or affiliated entities hold rights sufficient to license or transfer the works. Second, in Section III.B *supra*, the Court has already determined that a genuine dispute of material fact exists as to whether Defendants and others are joint authors of the Recordings. Because the issue of joint authorship remains disputed and unresolved, Defendants cannot reassert its joint authorship argument under different, non-governing law as a basis for summary judgment.

Third, Defendants' assertion that another joint author, not Plaintiffs, licensed the Recordings to Defendants is wholly unsubstantiated. Defendants have not provided any evidence demonstrating that any purported co-author had the legal authority to grant such a license or that such a license was ever executed. Defendants' citation to Luis's testimony fails to move the needle, as that testimony discusses a contract between Korta Records and Believe, and Defendants

fail to explain the relevance of this contract to the issue of joint authorship.  "It is not the job of the court to search through the record and make arguments for the parties."  *Broughton v. Crews*, No. 15-CV-22925, 2016 WL 4628051 (S.D. Fla. Jan. 28, 2016), *R&R adopted*, No. 15-CV-22925, 2016 WL 4625616 (S.D. Fla. Sept. 6, 2016); *see also, Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("With a typically heavy caseload and always limited resources, a district court cannot be expected to do a petitioner's work for him.").

While Defendants' invocation of U.S. copyright registrations and the principle of potential joint authorship may raise questions regarding Plaintiffs' claim of sole ownership and the validity of their later-filed Venezuelan registrations, these contentions do not eliminate the genuine factual disputes that remain.  At most, they underscore the existence of conflicting evidence regarding initial ownership, authorship, and the scope of any rights transfer — issues that must be resolved by the trier of fact, not on summary judgment.  Accordingly, Defendants' argument does not warrant summary judgment.

### D.  <u>Summary Judgment as to Edi Korta</u>

Defendants argue that summary judgment should be granted in favor of Edi Korta because there is no evidence that it copied, induced, or contributed to any alleged infringement of the Recordings at issue, nor that it had a direct financial interest in their exploitation.  *See* ECF No. [83] at 15-16.  They contend that Edi Korta merely served as the publishing company for the Record Label, handling composition rights rather than the Recordings, and therefore cannot be held liable for the alleged infringement.  *See id*.  Plaintiffs failed to respond to this argument.  *See generally* ECF Nos. [100] and [101].

Under the Local Rules, a court may deem a movant's statement of material facts admitted and may grant summary judgment by default where the opposing party fails to properly controvert the movant's supported factual assertions.  *See* S.D. Fla. L.R. 56.1(c), 7.1(c)(1).  However, the

Court's authority to do so presumes that the movant's statement of facts is adequately supported by record evidence. *See id*. at 56.1(c). Summary judgment cannot be granted merely because the opposing party failed to respond if the movant has not met its initial burden of demonstrating the absence of a genuine dispute of material fact. *See Celotex*, 477 U.S. at 323.

Here, Defendants contend that Edi Korta merely served as the publishing company for the Record Label, handling only composition rights rather than the Recordings at issue. *See* ECF No. [83] at 16. The record, however, does not support that contention. The only citations offered by Defendants in support of this factual assertion are to portions of Luis's deposition testimony that do not reference Edi Korta at all. One citation concerns a company called "Editora," with no explanation of its relationship, if any, to Edi Korta. *See* ECF No. [83] at 16 (citing ECF No. [128] at 24:23-24). The second citation pertains to the album cover artwork and to Baloa's role as a composer and likewise fails to address the nature or function of Edi Korta. *See* ECF No. [84] at ¶2 (citing ECF No. [128] at 73:15-24).

Defendants' failure to cite to any competent record evidence establishing that Edi Korta acted solely as a publishing company — and not in connection with the Recordings — means they have not met their initial burden under Rule 56. Without evidentiary support for this central factual premise, the Court cannot grant summary judgment in Defendants' favor by default. Accordingly, summary judgment should be denied as to Edi Korta.

### E.      Contributory and Vicarious Copyright Infringement

Defendants argue that Plaintiffs' contributory and vicarious copyright infringement claims cannot stand independently from their direct infringement claims. *See* ECF No. [83] at 16-18. They contend that if the Court grants summary judgment in Defendants' favor on any portion of the direct infringement claims, it must also do so for the secondary infringement claims, since both depend on proof of underlying infringing conduct. *See id*. Because the Court should not grant

CASE NO. 24-CV-20522-LEIBOWITZ/Elfenbein

summary judgment in Defendants' favor on any portion of the direct infringement claims, there is no basis to grant summary judgment on the secondary claims.

## IV.    CONCLUSION

For the foregoing reasons, I respectfully **RECOMMEND** that Defendants' Motion for Final Summary Judgment on Plaintiffs' Copyright Claims, **ECF No. [83]**, be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable David S. Leibowitz, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE and ORDERED** in Chambers in Miami, Florida on December 17, 2025.

_____
**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc:  All Counsel of Record